■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNY LEE, Appellant.—Judgment, Supreme Court, New York County (Herbert J. Adlerberg, J.), rendered January 23, 1990, convicting defendant, after a jury trial, of two counts of assault in the first degree (Penal Law § 120.10 [3]) and one count each of criminal possession of a weapon in the second and third degrees (Penal Law §§ 265.03, 265.02), and sentencing him to an indeterminate term of five to fifteen years on each of the assault counts, to run consecutively, two and one-third to seven years for criminal possession of a weapon in the third degree, to run consecutively to the assault counts, and five to fifteen years for criminal possession of a weapon in the second degree, to run concurrently with the other sentences, unanimously reversed on the law, the facts and as a matter of discretion in the interest of justice and a new trial ordered.

The conviction at issue resulted from defendant's second trial for the shooting of Andrew Liang, a member of a Chinatown youth gang known as the Tong On. Defendant and his brother Michael Lee, both members of the rival Flying Dragons youth gang, were originally tried on charges of attempted murder in the second degree, two counts of assault in the first degree under both intentional and depraved indifference theories, and criminal possession of a weapon in the second and third degrees. The brothers were acquitted of the attempted murder charge and one intentional assault charge. The court dismissed the other intentional assault charge. Michael Lee pleaded guilty to criminal possession of a weapon in the third degree in exchange for a sentence of five years' probation. A mistrial was declared as to defendant on the depraved indifference assault charges and the weapons charges. Defendant was retried on these charges and found guilty.

The primary issue before the court is whether it was error

for the court to admit, as an excited utterance, a statement of declarant, believed to be the victim of a Chinatown gang shooting. The declarant was deceased at the time of trial from unrelated causes. We find that the statement was erroneously admitted and, accordingly, we reverse and order a new trial.

On April 9, 1987 at approximately 3:30 P.M., Andrew Liang was shot twice in the back while leaving the scene of a confrontation with defendant, Michael Lee and another Flying Dragons gang member. This happened on a Manhattan street in Chinatown. A young girl was also shot. Liang was taken to Beekman Hospital in critical condition, awake but not talking. A Beekman physician, Dr. Robert Reader, testified that Liang was in a moderate amount of pain and not physically in shock because his blood pressure and respiratory rates were within normal limits. Also, the victim's pulse was just a little fast. There was no testimony that Liang ever lost consciousness. Liang executed a consent form for the surgery he was about to undergo.

At approximately 4:30 P.M., prior to the surgery, Police Officer Michael Wagner spoke to Liang in the operating room in the presence of nurses and a police sergeant. Officer Wagner testified at a hearing to determine whether the allegedly excited utterance should be admitted as follows: "I said to him, 'Andy, who shot you?' He said to me, 'Michael, Johnny', and I said to him 'Lee', and he said, 'Yes'." The officer testified in a similar fashion at the trial.

Dr. Reader further testified that, in his opinion, by 4:30 P.M. when Liang spoke with Officer Wagner, he was stable enough to fabricate. However, the doctor believed Liang was "emotionally in shock."

In addition to this testimony, the jury heard eyewitness testimony from Andrew Wai and Jian Ping (via transcript from the first trial), a Tong On member with Liang, that defendant was the shooter. Wai, who was not a gang member, also testified that he closely associated with Liang, Ping and other Tong On members. Wai further testified that Michael Lee handed the gun to the defendant. Significantly, Ping testified that Liang was like a brother to him and that he would lie if Liang told him to do so. Luis Gaglia, a "non-gang" witness, testified that the shooter, whom he saw only from the back, was a dark Asian with black hair, very skinny, approximately 5 feet 9 inches tall, wearing a dungaree faded light blue jacket. This physical description fit defendant's brother Michael Lee more closely than it fit defendant. However, on

the day of the shooting Michael Lee was supposedly wearing a black army jacket and defendant a "greyish" blazer.

In light of the medical testimony that Liang was not in shock, had never lost consciousness and at the time of his statement had the capacity to fabricate and in fact had provided his informed consent for surgery and the fact that defendant was a member of the declarant's archrival gang, we cannot reasonably conclude "that the remarks were not made under the impetus of studied reflection" *(People v Edwards,* 47 NY2d 493, 497 [1979]; *see, People v Brown,* 70 NY2d 513 [1987] [statement admitted as an excited utterance where declarant unable to reflect because he was in shock and severe pain]; *People v Brooks,* 71 NY2d 877 [1988] [statement admitted as an excited utterance where declarant was unable to reflect because he was physically and emotionally traumatized and in and out of consciousness]). Therefore, it was error to admit Liang's statement as an excited utterance. Moreover, given the identification testimony presented at trial, it cannot be said that this error was harmless. Accordingly, the judgment should be reversed and a new trial granted. Concur—Murphy, P. J., Sullivan, Kassal and Smith, JJ.