■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BYRON SIMPSON, Appellant. [656 NYS2d 765] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Juviler, J.), rendered March 28, 1994, convicting him of robbery in the first degree, attempted rape in the first degree, sexual abuse in the first degree, sodomy in the first degree, and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of robbery, criminal possession of stolen property in the fifth degree, and various sex offenses in connection with the robbery and sexual assault of a young woman early one morning. The defendant accosted the complainant as she was returning to her apartment from a nearby store. He held a box cutter to her throat, stole her engagement ring, and took her into an alley where he sexually assaulted her. The complainant convinced the defendant that she would give him a $100 bill that she had in her apartment if he would leave her alone. The defendant held the box cutter against the complainant's shoulder as they walked to her apartment. Upon approaching her apartment the complainant saw two friends standing outside the building. She pushed the defendant's arm away and ran towards her friends screaming "[g]et him". The defendant fled and her friends gave chase. The complainant initially joined the pursuit but returned to her apartment and telephoned "911". Approximately five minutes elapsed between the time the defendant fled the scene and the complainant's call to the police. Shortly thereafter, the defendant was apprehended by the police on a nearby street. The complainant's engagement ring and a box cutter were recovered from the defendant.

On appeal, the defendant contends that the trial court erred in admitting into evidence, as an excited utterance, a tape recording of the complainant's telephone call to 911 (hereinafter the 911 tape recording). During the trial, prior to the complainant's testimony, the defense counsel stated that he had listened to the tape recording and objected to its admission. The defense counsel argued that the complainant's statements to the 911 operator were not spontaneous because she made the telephone call after speaking to her friends outside the apartment. In ad-

dition, he argued that the tape recording was prejudicial because the complainant could be heard crying and that the tape recording was unreliable because the complainant had time to fabricate. The defense counsel did not advise the court of any particular fabrication by the complainant but spoke of the "opportunity" or "possibility" of fabrication.

The court allowed the tape recording into evidence as an excited utterance, and the tape was played for the jury during the complainant's direct testimony. On cross examination, the complainant admitted that she told the 911 operator that the defendant had a gun and a knife, although there actually was no gun. On redirect examination, the complainant explained that she told the 911 operator that the defendant had a gun because, at that time, one of her friends was still chasing the defendant, "[s]o I tried to get the cops there as quick as possible. And I knew that if I said that there was a gun, that the cops would come quicker".

Following the complainant's testimony, the defense counsel did not renew his objection to the admission of the 911 tape recording. Instead, after the court charged the jury, the defense counsel moved for a mistrial on two grounds: (1) the court's charge permitted the jury to use the 911 tape recording as corroboration of the complainant's testimony, even though the complainant admitted that part of the tape recording contained a false statement, and (2) the 911 tape recording was improperly admitted into evidence because the complainant had an opportunity to fabricate. The defense counsel argued "now we know that the tape is unreliable based on [the complainant's] testimony".

On appeal, the defendant concedes that, if the tape recording was properly admitted into evidence as an excited utterance, the court's instruction to the jury with respect to the tape recording was proper.

We conclude that the trial court's initial determination that the tape recording was admissible as an excited utterance was not an improvident exercise of its discretion. Such a determination is entrusted in the first instance to the trial court, which must assess the nature of the event, the amount of time which elapsed between the occurrence and the statement, and the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth (see, *People v Edwards*, 47 NY2d 493, 497; *see also, People v Brown*, 70 NY2d 513, 519; *People v Nieves*, 67 NY2d 125, 135). Here, the nature of the attack on the complainant was undeniably traumatic, and only about five minutes elapsed between the

time the defendant fled the scene and her telephone call to 911. In those intervening minutes, the complainant told two friends, who were standing outside her apartment house, that the defendant had robbed and attempted to rape her, and she began to chase the fleeing defendant before returning to her apartment to call the police. Such activities hardly suggest that the complainant fabricated the incident or the defendant's participation therein.

The defendant asserts that the complainant's testimony, in which she admitted that she lied to the 911 operator about his possession of a gun, established that she did not "lack the reflective capacity essential for fabrication" (*People v Edwards, supra*, at 497), a key assumption underlying the excited utterance exception. However, the trial court concluded that "(t)he conversation taken as a whole shows by its contents and the demeanor of the voice of [the complainant] and the timing of the conversation that she was very clearly still under the influence of this stressful, terrifying event, and that * * * overcomes the significance of her admitted lie to the police about the gun". Under the circumstances of this case, we cannot conclude that the court's determination was an improvident exercise of its discretion (*see, e.g., People v Hawkins*, 193 AD2d 758). Moreover, the complainant's presence on the witness stand provided an additional justification for admission of the tape recording since the defendant had an opportunity to verify and test the trustworthiness of her statements by cross-examination (*see, People v Buie*, 86 NY2d 501, 511-513).

The sentence imposed by the court was neither harsh nor excessive (*see, People v Suitte*, 90 AD2d 80). Bracken, J. P., O'Brien and Thompson, JJ., concur.

Joy, J., dissents and votes to reverse the judgment and grant the defendant a new trial with the following memorandum in which Goldstein, J., concurs. I respectfully disagree with my colleagues. In my opinion, it was reversible error not to strike the 911 tape recording from evidence after the complainant admitted on cross-examination that she had knowingly and purposely lied to the 911 operator that the defendant had a gun. Accordingly, I would reverse and grant a new trial.

The underpinnings of the excited utterance exception to the prohibition against hearsay evidence require that in order for a statement to be admitted as an excited utterance, it must have been made contemporaneously or immediately after a startling event, while the person was still under the influence of the excitement precipitated by the event, and therefore, lacked the reflective capacity essential for fabrication (*see,

*People v Edwards*, 47 NY2d 493, 497; *see also, People v Caviness*, 38 NY2d 227; Barker and Alexander, Evidence in New York State and Federal Courts § 803 [1].1 [West 1996]). The test is "whether the declarant was so influenced by the excitement and shock of the event that it is probable that he or she spoke impulsively and without reflection rather than reflectively and with deliberation" (*People v Caviness, supra*, at 231).

In the instant case, the fact that the complainant had the cognitive ability to purposely lie to the 911 operator that the defendant possessed a gun in an effort to prompt a more immediate police response demonstrates that she was acting "under the impetus of studied reflection" (*People v Edwards, supra*, at 497; *see also, People v Brown*, 70 NY2d 513; *People v Esquilin*, 207 AD2d 686; *People v Lee*, 177 AD2d 288; *People v Russell*, 161 AD2d 815). In my view, her prevarication undermined the essential reliability of the subject statement (*see, People v Edwards, supra; People v Caviness, supra*).

Nor can I agree with my colleagues' assessment that admission of the 911 tape recording was a provident exercise of the trial court's discretion. In its findings, on which it based its denial of the defendant's motion for a mistrial following the court's jury charge, the court stated, "were it not for the fact that she did fabricate admittedly * * * it would seem to me inescapably that her statements to the 911 operator were an excited utterance". It appears to me, therefore, that the court recognized, but improvidently chose to disregard, an essential criterion that an excited utterance must lack the reflective capacity essential for fabrication (*see, People v Edwards, supra*). My colleagues find this acceptable. I do not.

Furthermore, it is my opinion that inasmuch as the evidence related to the sexual offenses committed was hardly overwhelming, the error stemming from admission of the tape cannot be deemed harmless (*see, People v Crimmins*, 36 NY2d 230).