OPINION OF THE COURT
Ethan Greenberg, J.
*740 Defendant moves in limine for an order excluding as evidence at trial a recording of a call to 911 madé by the complainant in this domestic assault case. Both sidés anticipate that the complainant will likely refuse to appear;to testify for either the prosecution or the defense at trial. Defendant argues that the 911 call is hearsay and that its admission at trial would violate the defendant’s Sixth Amendment right to confront the witnesses against him. The People argue that the call qualifies for the “excited utterance” exception to the hearsay rule (see People v Cotto, 92 NY2d 68 [1998]), and that its admission would not violate the Sixth Amendment. It also appears that under the circumstances of this case the People will likely not be able to proceed to trial without the 911 call as evidence.
This case represents an early opportunity for trial courts like this one to begin to work out in practice the meaning and concrete application of the new principles of Sixth Amendment analysis recently set forth by the United States Supreme Court in Crawford v Washington (541 US —, 124 S Ct 1354 [2004]). In particular, this case requires this court to evaluate whether the holding in White v Illinois (502 US 346 [1992]) — under which the 911 call in the present case would have been clearly admissible — remains good law after Crawford. For the reasons detailed below, the court denies the motion because the 911 call here is not “testimonial” in nature as the term “testimonial” is used in Crawford.
1. Crawford v Washington
The recent decision of the United States Supreme Court in Crawford v Washington overturned the previously well-settled rule of Ohio v Roberts (448 US 56 [1980]) and substantially altered the law with respect to the Sixth Amendment’s Confrontation Clause and the relationship of that clause to various rules of evidence regarding hearsay and hearsay exceptions.
Under the prior rule of Ohio v Roberts, the admission of an unavailable witness’s statements against a criminal defendant at trial did not violate the Confrontation Clause, provided that the statement bore adequate indicia of reliability. To meet that test the statement had to either (1) fall within a “firmly rooted hearsay exception,” or (2) bear “particularized guarantees of trustworthiness.” (Roberts at 66.)
Crawford rejects the Roberts approach. In particular, the Crawford court focused on the second part of the Roberts rule which permits the introduction of hearsay statements when the *741 trial court finds that they bear “particularized guarantees of trustworthiness.” That standard, says Crawford, is too subjective and malleable and does not comport with the Sixth Amendment’s firm guarantee of the right to confront one’s accusers:
“The Roberts test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability . . .
“Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.” (Crawford v Washington, 541 US at —, 124 S Ct at 1370-1371.)
Crawford features a long and scholarly historical discussion of the origins and meaning of the Confrontation Clause. The Supreme Court comes to the conclusion that the principal evil at which the clause was directed was the use of ex parte examinations of witnesses against a defendant at a criminal trial. This practice was common in civil law countries. During the 16th and 17th centuries it also became common in England for justices of the peace in felony cases to examine witnesses and defendants ex parte prior to trial, and for the examinations to be used as evidence at trial in lieu of live testimony. Perhaps most famously this practice was employed (over strong protest) in the celebrated treason trial of Sir Walter Raleigh in 1603. In a sense, the Confrontation Clause echoes Raleigh’s dramatic (but unsuccessful) demand to “Call my accuser before my face.” (Crawford, 541 US at —, 124 S Ct at 1360.)
Based on this historical analysis, the Crawford court finds that the Sixth Amendment’s Confrontation Clause bars the use of a “testimonial” statement made by a witness who does not appear at a criminal trial, unless the witness is unavailable to testify at trial and was subject to cross-examination at the time the statement was made. On the other hand, says Crawford, where the statement is not “testimonial” in nature, the Confrontation Clause is ordinarily not implicated; in such a case the statement’s admissibility is merely a matter of applying evidentiary rules regarding hearsay and various hearsay exceptions. (Crawford, 541 US at —, 124 S Ct at 1373-1374.)
Thus, under Crawford, Sixth Amendment Confrontation Clause analysis will usually turn on the question whether a particular statement is testimonial in nature or not. However, the *742 Crawford decision expressly declines to; define what a testimonial statement is, beyond providing a few illustrative examples. Instead, the Court wrote:
“We leave for another day any effort to spell out a comprehensive definition of ‘testimonial.’ Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.” (Crawford, 541 US at —, 124 S Ct at 1374.)
Accordingly, the Supreme Court overturned defendant Crawford’s conviction because it had been based in part upon a statement made by the defendant’s wife (herself a suspect in the same crime) to the police in a tape-recorded station house interrogation; the Court found that such a statement was testimonial in nature.
The Crawford decision explains that “police interrogations” are testimonial in nature because they bear a “striking resemblance” to the pretrial examinations by English justices of the peace against which the Confrontation Clause was directed. (Crawford, 541 US at —, 124 S Ct at 1365.) But — in a manner somewhat similar to its approach to the definition of testimonial statements — the Crawford court expressly declines to define what constitutes a “police interrogation” for Confrontation Clause purposes. (Thus the Crawford opinion states, “ [jjust as various definitions of ‘testimonial’ exist, one can imagine various definitions of ‘interrogation,’ and we need not select among them in this case” [Crawford, 541 US at — n 4, 124 S Ct at 1365 n 4].)
Chief Justice Rehnquist’s concurring opinion in Crawford criticizes the majority opinion for “grandly” declaring that the definition of a testimonial statement must wait for another day. He points out that
“[TJhousands of federal prosecutor^ and . . . tens of thousands of state prosecutors need answers as to what beyond the specific kinds of ‘testimony’ the Court lists ... is covered by the new rule. They need them now, not months or years from now. Rules of criminal evidence are applied every day in courts throughout the country, arid parties should not be left in the dark in this manner.” (Crawford, 541 US at —, 124 S Ct at 1378.)
*743 The case of Octivio Moscat presently before this court demonstrates that the Chief Justice’s comments are apt. If anything they are understated. There are thousands of homicide and assault cases every year where a 911 call for help made by the victim to the police is an important piece of evidence. Are such calls testimonial in nature, or not? Do they constitute “police interrogation” (because the caller answers questions posed by the police operator), or not? May they be admitted into evidence under various traditional exceptions to the hearsay rule? Or would their admission violate the Sixth Amendment? The Crawford decision is rich in detail about the law of England in the 16th, 17th and 18th centuries, but — as the Chief Justice points out — it fails to give urgently needed guidance as to how to apply the Sixth Amendment right now, in the 21st century.
2, Crawford and “Victimless” Domestic Violence Prosecutions
It thus falls to trial courts to work out the concrete meaning of Crawford, at least in the short term. The issue is of special importance to courts — like this one — dedicated to trying cases of alleged domestic violence. That is so because (as has been amply documented in much recent legal literature) complainants in domestic violence cases often refuse to come to court to testify at trial.
There are many reasons given for this phenomenon. Most obviously, in a domestic murder case the victim is by definition unable to testify at trial. Prosecutors like to point out that some complainants in domestic assault cases are unwilling to testify at trial because they fear the defendant, because they are economically or emotionally dependent upon the defendant, or because they are reluctant to break up their own families. Defense lawyers, for their part, like to point out that some complainants in domestic assault cases do not come forward to testify at trial because they fear that cross-examination will expose their original complaints as false or greatly exaggerated.
In any event, because complainants in domestic violence cases often do not appear for trial, prosecutors have in recent years increasingly tried to fashion “victimless” prosecutions. In such a case, the government tries to prove the defendant’s guilt without testimony from the complainant through other evidence. Often prosecutors attempt to prove such cases in important part by offering certain out-of-court statements made by the complainant; they ask that such statements be admitted in evidence pursuant to various exceptions to the hearsay rule.
*744 Thus, to give two examples: prosecutors often offer statements made by a domestic violence victim to doctors at a hospital as statements made for the purpose of seeking medical treatment; prosecutors also often offer statements made by a domestic violence victim to the first police officers arriving at the scene as “excited utterances.” (See People v Swinger, 180 Misc 2d 344 [Crim Ct, NY County 1998] [medical records]; People v Fratello, 92 NY2d 565 [1998] [statements by shooting victim to first officers at scene as excited utterances], cert denied 526 US 1068 [1999].)
Perhaps the most common form of such evidence is a call for help made by a woman to 911. Typically, in such a call a woman tells the 911 operator (in New York City, a civilian police employee) that her boyfriend has just shot, stabbed or beaten her (and may be about to do so again); usually, the woman hurriedly answers a few questions from the operator and then asks the operator to send police officers and an ambulance to her aid. The present case fits that description.
Prior to Crawford, such a call for help to 911 would ordinarily be admitted into evidence as an “excited utterance,” provided that the evidence established all the elements of that hearsay exception. (See, e.g. People v Simpson, 238 AD2d 611 [2d Dept 1997], lv denied 90 NY2d 910 [1997]; People v Walker, 238 AD2d 246 [1st Dept 1997], lv denied 90 NY2d 944 [1997].) In brief, to qualify a statement as an excited utterance the party offering the statement must show that the declarant was under the stress of excitement caused by an external event sufficient to still the declarant’s reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful. In evaluating whether a statement qualifies as an excited utterance, the court must assess the nature of the startling event, the amount of time that passed between the event and the statement, and whether the nature of the declarant’s activities during the interim was such that declarant had an opportunity to reflect and falsify. (People v Vasquez, 88 NY2d 561 [1996]; People v Brown, 70 NY2d 513 [1987].)
Prior to Crawford, it was also fairly clear that the admission of such a 911 call as an excited utterance would not violate the Sixth Amendment’s Confrontation Clause. In White v Illinois (502 US 346 [1992]) the Supreme Court, (relying on the rule of Ohio v Roberts) found that because certain statements made by a child/victim of a sexual assault to the child’s mother, babysitter and a police officer qualified as “spontaneous declarations” *745 under Illinois law (a hearsay exception essentially identical to New York’s “excited utterance” exception), and because the “spontaneous declaration” was a firmly-rooted hearsay exception, the Sixth Amendment did not bar the use of those statements at trial. Thus, White clearly seemed to confirm that an “excited utterance” — such as a 911 call — could be admitted without violating the Confrontation Clause. (See generally, People v Sanders, 56 NY2d 51, 63 [1982], rearg denied 57 NY2d 674 [1982]; Martin, Capra and Rossi, New York Evidence Handbook, The Relationship Between the Hearsay Exceptions and the Right to Confrontation § 8.8, at 856 [2d ed]; Shechtman, Outside Counsel, “Crawford” and Confrontation Clause Jurisprudence, NYLJ, Feb. 2, 2004, at 4, col 4.)
But Crawford now throws the holding of White into considerable doubt. Under Crawford, the relevant inquiry now is not whether the 911 call falls into a well-rooted hearsay exception such as the “excited utterance.” Rather, the relevant inquiry under Crawford is whether a 911 call for help is testimonial in nature. That is the question of first impression that this court must now decide. If the 911 call in the present case is testimonial, then Crawford teaches that the Sixth Amendment bars its use at trial.
3. The 911 Call is Not Testimonial in Nature
A 911 call for help is essentially different in nature than the “testimonial” materials that Crawford tells us the Confrontation Clause was designed to exclude.
A 911 call is typically initiated not by the police, but by the victim of a crime. It is generated not by the desire of the prosecution or the police to seek evidence against a particular suspect; rather, the 911 call has its genesis in the urgent desire of a citizen to be rescued from immediate peril. Thus, a pretrial examination is clearly “testimonial” in nature in part because it is undertaken by the government in contemplation of pursuing criminal charges against a particular person. But a 911 call is fundamentally different; it is undertaken by a caller who wants protection from immediate danger. A testimonial statement is produced when the government summons a citizen to be a witness; in a 911 call, it is the citizen who summons the government to her aid.
Somewhat similarly, Crawford tells us that “police interrogations” are testimonial because they are closely analogous to the 16th and 17th century English practice of pretrial examinations *746 conducted by justices of the peace, a practice against which the Confrontation Clause was intentionally directed. The analogy is fair enough. Admittedly, the creation of a professional police force is a relatively modern development that postdates the Confrontation Clause, and it is also conceded that the English justices of the peace performed some quasi-judicial and prosecutorial functions not performed by modern day police officers. Nevertheless, there is indeed a real resemblance between the old English examinations before trial and modern formal police interrogations, such as the tape-recorded station house interrogation in Crawford.
But the analogy should not be extended too far. The 911 call— usually, a hurried and panicked conversation between an injured victim and a police telephone operator — is simply not equivalent to a formal pretrial examination by a justice of the peace in Reformation England. If anything, it is the electronically augmented equivalent of a loud cry for help. The Confrontation Clause was not directed at such a cry.
Moreover, a 911 call can usually be seen as part of the criminal incident itself, rather than as part of the prosecution that follows. Many 911 calls are made whilé an assault or homicide is still in progress. Most other 911 calls are made in the immediate aftermath of the crime. Indeed, the reason why a 911 call can qualify as an “excited utterance” exempt from the rules of evidence barring hearsay is that very little time has passed between the exciting event itself and the call for help; the 911 call qualifies as an excited utterance precisely because there has been no opportunity for the caller to reflect and falsify her (or his) account of events.
The Confrontation Clause spells out the right of defendant to confront the “witnesses” against him. A person who gives a formal statement, or deposition, or affidavit is conscious that he is bearing witness, and that his words will impact further legal proceedings. That is not usually the case with a 911 call. Typically, a woman who calls 911 for help because she has just been stabbed or shot is not contemplating being a “witness” in future legal proceedings; she is usually trying ¡simply to save her own life.
For all these reasons, this court finds that a 911 call for help is not “testimonial” in nature, as that term is used in Crawford; accordingly, it may be received in evidence without offending the Sixth Amendment, provided that it meets the requirements for an “excited utterance” or other exception to the hearsay rule.
*747 The motion in limine is denied. The 911 call will be received in evidence as an excited utterance provided that the People make an appropriate preliminary evidentiary showing at trial.