CITY OF LAS VEGAS, Appellant, *v.* THE HONORABLE JESSIE WALSH, JUDGE OF THE LAS VEGAS MUNICIPAL COURT, and MIKE WAYNE GEHNER, Respondents.

No. 41317

June 11, 2004                                    91 P.3d 591

---

*Bradford R. Jerbic,* City Attorney, and *Edward G. Poleski,* Deputy City Attorney, Las Vegas, for Appellant.

*Martin D. Hastings,* Las Vegas, for Respondent Gehner.

Before SHEARING, C. J., ROSE and MAUPIN, JJ.

## OPINION

*Per Curiam:*

This case involves the admissibility of an affidavit of a registered health professional pursuant to NRS 50.315(4). At the outset of the trial, the City of Las Vegas requested that the municipal court admit the affidavit of a registered nurse who withdrew Mike Gehner's blood. The municipal court ruled that certain facts contained in the affidavit were not admissible, and thus, the nurse would need to testify. The City then filed a petition for a writ of mandamus requesting the district court to compel the municipal court to admit the nurse's affidavit in its entirety. The district court denied the petition. We agree that the affidavit in its entirety was not admissible, but we do so on different grounds from those relied upon by the district court. Accordingly, we affirm the district court's denial of the City's petition for a writ of mandamus.

### PROCEDURAL HISTORY

Gehner was charged with driving under the influence of alcohol. At the outset of Gehner's trial, the City requested a preliminary ruling from the municipal court (Judge Jessie E. Walsh) regarding the admissibility of the affidavit of a registered nurse who withdrew blood from Gehner for a blood-alcohol test. The affidavit stated the nurse's name and her employer, that she was authorized to withdraw blood as a regular part of her duties, the date and time she withdrew the blood, that she withdrew the blood from Gehner in a medically acceptable manner, that she used no alcohol solutions or alcohol-based swabs, and that she kept the sample in her custody and in the same condition as when she withdrew it until she delivered it to law enforcement.

The City argued that all of the facts contained in the nurse's affidavit were admissible; consequently, it was not necessary for the nurse to testify at trial. Gehner countered that certain facts in the affidavit were not admissible under NRS 50.315(4), namely that the nurse used no alcohol solutions or alcohol-based swabs. Gehner argued that if the inadmissible facts were struck from the affidavit, a bona fide dispute would exist; hence, the nurse would need to testify at trial.

The municipal court concluded that the nurse's affidavit could only be admitted for the purposes enumerated in NRS 50.315(4), and the fact that the nurse did not use alcohol solutions or alcohol-based swabs is not one of those purposes. Accordingly, the municipal court resolved that the nurse's presence at trial was necessary and, thus, granted a continuance.

Thereafter, the City filed a petition for a writ of mandamus in the district court, requesting the district court to compel the municipal court to admit the nurse's affidavit in its entirety. After holding a hearing, the district court denied the petition, agreeing with the municipal court's interpretation of NRS 50.315. The City appeals.

## DISCUSSION

[Headnotes 1, 2]

A district court's decision to deny a writ petition is generally reviewed under an abuse of discretion standard.[1] However, questions of statutory construction are questions of law that this court must review de novo.[2]

In this case, the nurse's affidavit included a statement that she did not use alcohol solutions or alcohol-based swabs in drawing Gehner's blood. The municipal court concluded that a health care professional's declaration regarding the withdrawal and storage of a blood sample is only admissible under NRS 50.315 to establish the four facts specifically identified in the statute. As a result, the municipal court concluded that the existence of a bona fide issue regarding the blood draw required the nurse's presence at trial and, thus, continued the trial. The district court agreed with the municipal court's interpretation of NRS 50.315(4), denying the City's writ petition. We agree with the district court's decision to deny the City's petition for a writ of mandamus, but do so on somewhat different grounds.

NRS 50.315(4) provides that the affidavit of a person who withdraws a sample of blood from another for analysis by an expert is admissible to prove:

(a) The occupation of the affiant or declarant;
(b) The identity of the person from whom the affiant or declarant withdrew the sample;
(c) The fact that the affiant or declarant kept the sample in his sole custody or control and in substantially the same condition as when he first obtained it until delivering it to another; and
(d) The identity of the person to whom the affiant or declarant delivered it.

The City argues that, when interpreted broadly, NRS 50.315(4) allows for the inclusion in the affidavit of the nurse's statement that she did not use alcohol solutions or alcohol-based swabs. The City contends that this statement is admissible pursuant to

---

[1]*City of Reno v. Reno Gazette-Journal,* 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003).

[2]*Id.*

NRS 50.315(4)(a) to demonstrate her occupation. The City also contends that this statement illustrates that Gehner's blood was withdrawn in a medically acceptable fashion, which is admissible under NRS 50.315(4)(c) as it relates to the condition of the blood sample. Alternatively, the City contends that this statement is admissible under the "catch all" hearsay exception—NRS 51.075.[3] Even if we accept the City's interpretation that the nurse's statement regarding not using alcohol solutions or alcohol-based swabs falls within the parameters of NRS 50.315(4) or the "catch all" hearsay exception, we nevertheless must conclude that the affidavit in its entirety is inadmissible in light of the United States Supreme Court's recent holding in *Crawford v. Washington*.[4]

In *Crawford,* the Court overturned the previously well-settled rule of *Ohio v. Roberts*[5] regarding the admissibility of hearsay evidence under the Sixth Amendment's Confrontation Clause.[6] Under the *Roberts* test, the admission of a hearsay statement against a criminal defendant at trial did not violate the Confrontation Clause provided the statement bore adequate indicia of reliability by either (1) falling within a "firmly rooted hearsay exception," or (2) bearing "particularized guarantees of trustworthiness."[7] The Court in *Crawford* rejected the *Roberts* approach, concluding that it departs from important historical principles because:

> First, it is too broad: It applies the same mode of analysis whether or not the hearsay consists of *ex parte* testimony. This often results in close constitutional scrutiny in cases that are far removed from the core concerns of the Clause. At the same time, however, the test is too narrow: It admits statements that *do* consist of *ex parte* testimony upon a mere finding of reliability. This malleable standard often fails to protect against paradigmatic confrontation violations.[8]

Accordingly, the Court held that the Confrontation Clause bars the use of a testimonial statement made by a witness who does not appear at trial, unless the witness is unavailable to testify at trial, and the defendant had a prior opportunity to cross-examine the witness regarding the statement.[9] On the other hand, the Court held

---

[3]NRS 51.075(1) provides that "[a] statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness."

[4]541 U.S. 36 (2004).

[5]448 U.S. 56 (1980).

[6]541 U.S. at 68.

[7]*Roberts,* 448 U.S. at 66.

[8]*Crawford,* 541 U.S. at 60.

[9]*Id.* at 68.

that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law," including exempting "such statements from Confrontation Clause scrutiny altogether."[10] Thus, under *Crawford,* the admissibility of a hearsay statement under the Confrontation Clause now necessarily depends on whether the statement is testimonial in nature. However, the Court expressly declined to define the term "testimonial," beyond stating that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[11] But the Court did make some observations, illustrating what might be considered testimonial. The Court noted that the text of the Confrontation Clause reflects the Framers' focus on ex parte examinations:

> It applies to "witnesses" against the accused—in other words, those who "bear testimony." "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.
>
> Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[12]

Several courts have issued opinions since *Crawford,* addressing the admissibility of hearsay statements under the new framework. In *State v. Rivera,*[13] the Connecticut Supreme Court determined that a declaration against penal interest was nontestimonial. A wit-

---

[10]*Id.*

[11]*Id.*

[12]*Id.* at 51-52 (alterations in original) (citations omitted).

[13]844 A.2d 191, 201-02 (Conn. 2004).

ness was permitted to testify regarding a conversation he had with his uncle, wherein his uncle made incriminating statements that he and the defendant had broken into a woman's house looking for items to steal, and that the defendant choked the woman and used an oil lamp to burn the house down.[14] The court concluded that "[t]he statement was not ex parte in-court testimony or its functional equivalent; it was not contained in any formalized testimonial materials such as affidavits, depositions or prior testimony. Moreover, the statement was not a confession resulting from custodial examination . . . ."[15] Thus, the court concluded that the statement was not testimonial in nature, and application of the *Roberts* test was thus appropriate to determine the admissibility of the statement.[16]

Likewise, in *Demons v. State,*[17] the Georgia Supreme Court concluded that, under *Crawford,* the deceased victim's hearsay statements, made during a conversation with a friend before the commission of the crime, were nontestimonial. The court determined that the statements were not similar to prior testimony or police interrogation, which are generally made with the expectation that they might be used at a later trial, and which *Crawford* pronounced were testimonial.[18] Therefore, the court concluded that the trial court did not err in admitting the statements because the victim was deceased, and the statements had the requisite indicia of trustworthiness to withstand a Confrontation Clause challenge.[19]

Finally, in *People v. Moscat,*[20] the New York Criminal Court considered whether a 911 call was admissible in a domestic assault prosecution under *Crawford.* The court observed that because complainants in domestic violence cases often do not appear for trial, prosecutors have increasingly tried to conduct victimless prosecutions by relying on evidence other than the victim's testimony, and that "[p]erhaps the most common form of such evidence is a call for help made by a woman to 911."[21] The court stated that prior to *Crawford,* the 911 call would ordinarily be admitted as an excited utterance without violating the Sixth Amendment's Confrontation Clause.[22] The court acknowledged

[14]*Id.* at 198.

[15]*Id.* at 201-02.

[16]*Id.* at 202.

[17]595 S.E.2d 76, 80 (Ga. 2004).

[18]*Id.*

[19]*Id.*

[20]777 N.Y.S.2d 875 (Crim. Ct. 2004).

[21]*Id.* at 878.

[22]*Id.* at 878-79.

that under *Crawford,* the relevant inquiry now is not whether the 911 call falls into a well-rooted hearsay exception (excited utterance in this instance); rather, the relevant inquiry is whether a 911 call is testimonial in nature.[23] The court concluded that a 911 call is not testimonial in nature for a number of reasons:

> A 911 call is typically initiated not by the police, but by the victim of a crime. It is generated not by the desire of the prosecution or the police to seek evidence against a particular suspect; rather, the 911 call has its genesis in the urgent desire of a citizen to be rescued from immediate peril. . . . A testimonial statement is produced when the government summons a citizen to be a witness; in a 911 call, it is the citizen who summons the government to her aid.[24]

Accordingly, the court concluded that a 911 call is nontestimonial and, thus, may be admitted without violating the Sixth Amendment's Confrontation Clause.

Unlike the statements in the aforementioned cases, a health professional's affidavit made pursuant to NRS 50.315(4) is prepared solely for the prosecution's use at trial. As indicated in the title of NRS 50.315, it is "offered to prove certain facts concerning use of certain devices or withdrawal or holding of evidence related to determining presence of alcohol." Based on the cases that have dealt with the issue of whether a statement is testimonial and the inferences that can be drawn from *Crawford* as to what constitutes a testimonial statement, we conclude that an affidavit prepared for use at trial is testimonial. Accordingly, we hold that a health care professional's affidavit made pursuant to NRS 50.315(4) can only be admitted if the health care professional is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the health care professional regarding the statements in the affidavit.[25]

We note that the municipal court found that a dispute existed requiring the nurse's presence at trial since the nurse's statement about not using alcohol solutions or alcohol-based swabs was not

---

[23]*Id.* at 879.

[24]*Id.*

[25]*See Crawford,* 541 U.S. at 68. In *DeRosa v. District Court,* 115 Nev. 225, 985 P.2d 157 (1999), this court rejected a Confrontation Clause challenge to evidence admitted under NRS 50.315 based on the test set forth in *Ohio v. Roberts,* 448 U.S. 56 (1980), regarding the admissibility of hearsay evidence under the Confrontation Clause. To the extent that *DeRosa* relied on *Roberts,* it is overruled.

permitted under NRS 50.315(4). Granted, pursuant to the statutory scheme at issue, the court may order the prosecution to produce a witness if, before trial, the defendant establishes that:

> (a) There is a substantial and bona fide dispute regarding the facts in the affidavit or declaration; and
> (b) It is in the best interests of justice that the witness who signed the affidavit or declaration be cross-examined . . . . [26]

However, we do not think that the situation presented in this appeal is the type of "bona fide dispute regarding the facts in the affidavit" contemplated in NRS 50.315. Here, the parties disputed whether certain facts were admissible as a matter of law, not whether certain facts in the affidavit were accurate. The legislative history reveals that NRS 50.315(6) was added to the statutory scheme to afford the defense an opportunity to call the affiant if the defense showed good cause or reason to question the validity of the affidavit.[27] Thus, a bona fide dispute would have been created under the statute had Gehner questioned the nurse's testing methods, as opposed to challenging the admissibility of a fact contained in the affidavit.

Accordingly, the municipal court's basis for continuing the trial, that it was warranted under NRS 50.315(6), was erroneous. Nevertheless, the municipal court reached the proper result. Thus, the district court did not abuse its discretion in denying the City's petition for a writ of mandamus.

## CONCLUSION

Applying the Supreme Court's holding in *Crawford,* we hold that a health care professional's affidavit made pursuant to NRS 50.315(4) is testimonial, and can only be admitted if the health care professional is unavailable to testify at trial, and the defendant had a prior opportunity to cross-examine the health care professional regarding the statements in the affidavit.[28] Because the aforementioned Confrontation Clause test was not satisfied in this instance, we conclude that the nurse's affidavit was not admissible. Accordingly, we affirm the district court's order denying the City's petition for a writ of mandamus.

---

[26]NRS 50.315(6).

[27]Hearing on S.B. 157 Before the Assembly Comm. on Judiciary, 68th Leg. (Nev., June 1, 1995).

[28]We note that a defendant is still free to waive his confrontation rights and stipulate to the admission of a health care professional's affidavit.