IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00096-CR

 

Mark J. Kearney,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 03-02200-CRF-361

 



Opinion



 

          Asserting four issues, Appellant Mark Kearney
challenges his conviction of attempted capital murder.  We will affirm.

Background

          Shirley Schultz, the owner of a Bryan
Western Union store, testified that while at the store on the evening of May
13, 2003, she heard gunshots in the store lobby.  She saw a masked man, waving
a gun and demanding money.  Schultz was able to run out the back door, go to a
neighboring house, and call 9-1-1 and report the armed robbery in progress.

          Dean Swartzlander, a Bryan police
officer, testified that he was on duty that evening when he heard a “robbery in
progress” call on his radio.  He was two blocks away from the Western Union
store and immediately drove there.  As he arrived at the store, he noticed a
white vehicle driving away.  A civilian pointed at the white vehicle and
indicated that it was involved in the robbery.  Swartzlander pursued it through
a residential neighborhood until the vehicle suddenly stopped at an
intersection.  The driver and a backseat passenger began to get out.  As
Swartzlander opened his patrol car door, the backseat passenger began shooting
at Swartzlander with a handgun, with one shot hitting his patrol car door. 
Swartzlander dropped to the ground and retreated to the back of his patrol
car.  From there, he fired two shots at the shooter, who was fleeing on foot.

          Walt Melnyk, another Bryan police
officer, arrived and joined Swartzlander in the foot pursuit.  They found Kearney behind a nearby restaurant; he was lying on the ground and suffering from gunshot
wounds.  Kearney was arrested and taken to a local hospital, where his gunshot
wounds were treated.  A short time later, a detective took a recorded statement
from Kearney in which he admitted that he was trying to shoot Swartzlander.

          Kearney was indicted for the felony
offense of attempted capital murder.  A jury found him guilty, and the trial
court assessed punishment at seventy-five years’ imprisonment.

Issues

          Kearney’s first issue asserts a
Confrontation Clause challenge to the 9-1-1 tape.  His other three issues
relate to the voluntariness of the recorded confession taken at the hospital.  Kearney does not challenge the sufficiency of the evidence.

 

9-1-1 Tape

          The dispatcher who took the call
identified the tape of the 9-1-1 call, his voice, and Schultz’s voice.  Schultz
identified her voice, the dispatcher’s voice, and the voices of the neighbors
(Allen and Janet Kennemore), whose house she had fled to and called 9-1-1
from.  Schultz reported the ongoing robbery, including that a shot had been
fired and two of her employees were still in the store.  The Kennemores’ mostly
inaudible voices can be heard in the background.  Mr. Kennemore can be heard in
the background saying “he [the alleged robber] fired a shot,” and Mrs.
Kennemore can be heard saying “they’re chasing him . . . he ran down that way .
. .  the cops are chasing him . . . no, they’re chasing him in the car.” 
Schultz then said that she was going back to her office and handed the phone to
Mrs. Kennemore, who said that she had just seen the robber driving down the street
and then that there was shooting taking place.

The tape of the 9-1-1 call was admitted over Kearney’s objection that his Sixth Amendment confrontation rights were being violated
because the State was not calling the Kennemores as witnesses and their statements
were on the 9-1-1 tape.  We review
de novo the trial court’s ruling that the admission of the 9-1-1 tape did not
violate Kearney’s Confrontation Clause rights.  McClenton v. State, 167
S.W.3d 86, 93 (Tex. App.—Waco 2005, no pet. h.).

The Sixth Amendment to the United States
Constitution provides that "[i]n all criminal prosecutions, the accused
shall enjoy the right to . . . be confronted with the witnesses against
him."  U.S. Const. amend.
VI.  The Confrontation Clause’s central concern is to ensure the reliability of
the evidence against a criminal defendant by subjecting it to rigorous testing
in the context of an adversarial proceeding before the trier of fact.  Lilly
v. Virginia, 527 U.S. 116, 123-24, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117
(1999).  The United States Supreme Court recently held that “testimonial
statements” of witnesses absent from trial are admissible over a Sixth
Amendment Confrontation Clause objection only when the declarant is unavailable
and only where the defendant has had a prior opportunity to cross-examine.  Crawford
v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 1368-69, 158 L.Ed.2d. 177
(2004).

The threshold issue in our Crawford
analysis is whether the statements were testimonial.  Spencer v. State,
162 S.W.3d 877, 879 (Tex. App.—Houston [14th Dist.] 2005, pet. filed).  The Crawford Court did not
define “testimonial,” but it noted three formulations of “core” testimonial
evidence:  (1) “ex parte in-court testimony or its functional
equivalent,” such as affidavits, custodial examinations, prior testimony not
subject to cross-examination, or “similar pretrial statements that declarants
would reasonably expect to be used prosecutorially,” (2) “extrajudicial
statements” of the same nature “contained in formalized testimonial materials,”
and (3) “statements that were made under circumstances which would lead an
objective witness reasonably to believe that the statement would be available
for use at a later trial.”  Crawford, 541 U.S. at 51–52, 124
S.Ct. at 1364.  The Court further explained that the term “testimonial” applies
“at a minimum to prior testimony at a preliminary hearing, before a grand jury,
or at a former trial; and to police interrogations.”  Id. at 68, 124
S.Ct. at 1374.

Whether statements such as those made by the
Kennemores in a 9-1-1 call to a dispatcher are testimonial for Confrontation
Clause purposes has been addressed by apparently only one Texas court to date. 
See Ruth v. State, 167 S.W.3d 560, 568-70 (Tex. App.—Houston [14th
Dist.] 2005, no pet. h.).  The court began its analysis by reviewing its most
recent precedent to determine whether a statement is testimonial:

(1)      Testimonial statements are official and formal
in nature. 

(2)      Interaction with the police initiated by a
witness or the victim is less likely to result in testimonial statements than
if initiated by the police.

(3)      Spontaneous statements to the police are not
testimonial.

(4)      Responses to preliminary questions by police
at the scene of a crime while police are assessing and securing the scene are
not testimonial.   

Id. at 568-69 (citing Spencer, 162 S.W.3d at 881-83).  Using
these principles, the Ruth court determined that statements to the
police—whether spontaneous or in response to preliminary questions—when police
are called to a crime scene shortly after a crime, are not testimonial because
such interactions are not initiated by the police and are not formal or
structured.  Id. at 569 (citing Spencer, 162 S.W.3d at 882-83). 
The court then said:

Though no Texas court has yet
addressed this situation, statements made during 911 calls are similar in
nature to the situation we addressed in Spencer.  Such statements are
not given in response to structured police questioning or with an eye to []
future legal proceedings but are initiated by a victim or witness to obtain
police assistance.  See People v. Corella, 18 Cal. Rptr. 3d 770,
776 (Ct. App. 2004); People v. Moscat, 777 N.Y.S.2d 875, 879–80 (Crim.
Ct. 2004); State v. Davis, 111 P.3d 844, 849 (Wash. 2005).  They usually
do not bear any of the official, formal qualities of the police interactions
the Confrontation Clause was intended to protect against.  See Corella,
18 Cal. Rptr. 3d at 776; Moscat, 777 N.Y.S.2d at 879–80; Davis,
111 P.3d at 850–51.  Some courts have held that statements made during 911
calls should be analyzed on a case-by-case basis because some statements could
be testimonial under certain circumstances.  See People v. West, 823
N.E.2d 82, 91 (Ill. App. Ct. 2005) (holding that 911 calls should be analyzed
on a case-by-case basis to determine whether statements at issue were
volunteered to obtain police action or the result of interrogation to gather
evidence for use in a criminal prosecution); People v. Mackey, 785
N.Y.S.2d 870, 872 (Crim. Ct. 2004) (noting that “[v]arious courts have begun to
adopt a fact-specific analysis of the particular call and the caller’s motive
for making the call” in conducting Crawford analyses); Davis, 111
P.3d at 850 (“In most cases, one who calls 911 for emergency help is not
‘bearing witness,’ whereas calls made to the police simply to report a crime
may conceivably be considered testimonial.  It is necessary to look at the
circumstances of the 911 call in each case to determine whether the declarant
knowingly provided the functional equivalent of testimony to a government
agent.”).  But see People v. Cortes, 781 N.Y.S.2d 401, 415 (Sup. Ct. 2004) (categorically concluding that “[c]alls to 911 to report a crime are testimonial
under [Crawford]”).

Id.

          We agree with Ruth
that it is necessary to look at the circumstances of each case to determine
whether statements made in a 9-1-1 call are testimonial under Crawford. 
See id.  In this case, Schultz’s 9-1-1 call was to report a robbery in
progress and to summon emergency police help.  The background statements of the
Kennemores and the statements made by Mrs. Kennemore after Schultz handed her
the phone were only in furtherance of Schultz’s non-testimonial call for help. 
Because the Kennemores’ statements on the 9-1-1 call were not testimonial, Kearney’s Sixth Amendment rights were not implicated, and the trial court did not err in
overruling his objection on that basis.  We overrule Kearney’s first issue.

Voluntariness of Confession

          Complaining of the trial
court’s denial of his motion to suppress his hospital bed confession, Kearney’s second and third issues challenge the voluntariness of the confession under the U.S. and Texas constitutions and article 38.22, section 6 of the Texas Code of Criminal Procedure. 
His fourth issue asserts that the State failed to produce competent medical
evidence during the Jackson v. Denno hearing on his motion to suppress to
show that Kearney was mentally or physically capable of giving a voluntary
statement.  We will consider the three issues together.

          An accused must give his
confession voluntarily before it can be used against him.  Penry v. State,
903 S.W.2d 715, 744 (Tex. Crim. App. 1995); Sendejo v. State, 953 S.W.2d
443, 447-48 (Tex. App.—Waco 1997, pet. ref’d.).  Once the accused contests the
admission of his statement on the ground of “involuntariness,” the due process
guarantee and article 38.22, section 6 require the trial court to hold a
hearing on the admissibility of the statement outside the presence of the
jury.  Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)
(citing Jackson v. Denno, 378 U.S. 368, 380, 84 S.Ct. 1774, 1782-83, 12
L.Ed.2d 908 (1964)); see Tex.
Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005).

          When reviewing a
suppression hearing ruling, we view the evidence in the light most favorable to
the trial court’s ruling.  See State v. Terrazas, 4 S.W.3d 720, 725 (Tex. Crim. App.
1999); Villarreal v.
State, 935 S.W.2d
134, 138 (Tex. Crim. App. 1996).  Voluntariness is determined by looking at the
totality of the circumstances.  See Griffin v. State, 765 S.W.2d
422, 427 (Tex. Crim. App. 1989).  The trial court is the sole judge of the weight and credibility of
the evidence, and the court's findings may not be disturbed on appeal absent a
clear abuse of discretion.  Alvarado, 912 S.W.2d at 211.  As such, abuse of discretion is the
appropriate standard of review for challenges to the trial court’s admission of
evidence.  See Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim.
App. 1998).

          At the hearing, the State
must prove voluntariness by a preponderance of the evidence.  Alvarado,
912 S.W.2d at 211.

However, the prosecution is not put
to this burden unless a defendant presents evidence that raises a voluntariness
question.  See Article 38.22, Section 6, (not applicable unless “a question is
raised as to the voluntariness of a statement”); Romero v. State, 800
S.W.2d 539, 544 fn. 7 (Tex. Cr. App. 1990) (“voluntariness must be put in issue
by facts before it is an issue”); Dunn v. State, 721 S.W.2d 325, 336
(Tex. Cr. App. 1986); compare Article 38.22, Section 7, V.A.C.C.P.,
(trial court not required to submit voluntariness question to jury unless “issue
is raised by the evidence”).

 

Terrazas, 4 S.W.3d at 725.  The typical case
involves a defendant presenting evidence that the police used unconstitutional
methods to obtain a confession and the prosecution controverting that evidence
with evidence that the police used constitutional methods.  Id. at
724-25.

         Substantive constitutional
law prohibits the government from using an involuntary confession against an
accused with the test for voluntariness being whether the confession is the
product “of an essentially free and unconstrained choice by its maker.”  Schneckloth
v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Alvarado
v. State, 912 S.W.2d 199, 211 (Tex. Cr. App. 1995) (statement is
involuntary “only if there was official, coercive conduct of such a nature that
any statement obtained thereby was unlikely to have been the product of an
essentially free and unconstrained choice by its maker”).  Whether the
confession is true or false is irrelevant to a voluntariness determination because
it is the methods used to extract an involuntary confession that offend
constitutional principles.  See Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 624 fn. 12, 625 fn. 13, 30 L.Ed.2d 618 (1972).

 

Id. at 723-24.

 

                   This
was not a typical case.  At the suppression hearing, Kearney did not testify. 
Detective Albert Neveu was called by the defense to testify about the hospital
bed confession that he had obtained from Kearney late in the evening after the
robbery and shootout.  Before talking to Kearney, Neveu was aware that he had
been shot twice and had been in surgery.  Neveu did not know how long Kearney had been out of surgery.  Neveu did not ask any physician whether Kearney had been
under anesthesia, nor whether Kearney was on any medication.  In response to Kearney’s counsel’s questions about Kearney’s physical condition at that time, Nevue said
that Kearney “looked like he was in pretty good shape.”  Nevue had anticipated
that Kearney would be “laying there kind of limp but he was pretty livid and
active laying down on his back.”

                   After
Neveu gave Miranda warnings to Kearney, the following pertinent exchange
occurred in the taped confession:

                   NEVEU:       Okay,
was you trying to hit the officer when you shot at him, or                      scare
him?

 

                   KEARNEY:   I was
trying to hit him.

          

                   NEVEU:       Okay,
so you could get away, correct?

          

                   KEARNEY:   Yes.

          

                   NEVEU:       Okay. 
How did you manage to get out of the car and get on                           foot? 
Did you decide to jump out and run or what was the deal                       there?

          

                   KEARNEY:   I
choose not to answer the question.

          

                   NEVEU:       Okay,
okay.  Did the officer tell you to stop? 

          

                   KEARNEY:   I seen
him out there; I seen him out there . . . (inaudible)

          

                   NEVEU:       Did
you shoot first or did he shoot first?  Or can you remember?

          

                   KEARNEY:   I
think I did.  I don’t, I don’t know about that.

          

                   NEVEU:       Okay.

          

                   KEARNEY:   But I
think I did.

          

                   NEVEU:       How
many times did you shoot?

          

                   KEARNEY:   I
don’t know.

 

                   The
State offered Kearney’s medical records into evidence.  They reflect that Kearney had three wounds:  entry and exit wounds from one bullet and a bullet fragment in
his chest “just beneath the skin.”  The wounds involved only the skin and soft
tissues.  Without being put under anesthesia, the bullet fragment was removed,
and Kearney was given Vicodin for pain.  After overnight observation, Kearney was discharged to the county jail the following morning.

                   On
cross-examination by the State, Neveu stated that he did not have any trouble
communicating with or understanding Kearney; Kearney’s conversation made
sense.  After reading Kearney the Miranda warnings, Kearney said that he
understood them.  He spoke with Neveu “freely and voluntarily.”  Kearney’s choice not to answer a question was an indication to Neveu that Kearney understood that he had the right to refuse to talk with Neveu.  Kearney never said
that he did not want to talk to Neveu, who said he did not coerce or persuade Kearney to talk or promise him anything.

                   The
trial court denied the motion and later issued findings.  The trial court found
that although Neveu did not inquire whether Kearney was on medication, Kearney appeared cognizant and alert at the time of the statement and exhibited an ability
to comprehend the questions and answered them appropriately.  Kearney showed a
clear ability to distinguish between questions that he was willing to answer
and those he was not willing to answer.

                   At
trial, and without objection, the State introduced the circumstances
surrounding Kearney’s confession.  Officer Melnyk testified that he rode with Kearney in the ambulance to the hospital and was in the ER with Kearney while physicians
treated him.  Kearney was not put under anesthesia; he was awake when they
removed the bullet.  Neveu’s trial testimony also included the voluntariness of
 Kearney’s confession; he testified that Kearney’s statement was freely and
voluntarily given and that Kearney understood his questions.  On cross-examination,
Nevue admitted that he did not know when Kearney had gotten out of surgery and
that he had assumed that Kearney was on pain medication.

                   In
closing argument, Kearney’s counsel argued voluntariness,[1] focusing on Neveu’s taking the
statement when Kearney “just got out of surgery” and “had . . . some
painkillers in him.”  “He’s [Neveu] taken that [statement] from a person who
just had two slugs removed from him some 20 minutes before just out of E.R.”

                   In a
review of a trial court’s suppression hearing ruling, we generally consider
only the evidence adduced at the suppression hearing.  Rachal v. State,
917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

However, this general rule is
inapplicable where, as in this case, the suppression issue has been
consensually re-litigated by the parties during trial on the merits.  Id.  [Hardesty v. State, 667 S.W.2d 130, 135 n.6 (Tex. Crim. App. 1984).] 
Where the State raises the issue at trial either without objection or with
subsequent participation in the inquiry by the defense, the defendant has made
an election to re-open the evidence, and consideration of the relevant trial
testimony is appropriate in our review.  Id. at 135; See also Webb v.
State, 760 S.W.2d 263, 272 n.13 (Tex. Crim. App. 1988), cert. denied,
491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989).  Moreover, it would be
unreasonable to ignore trial evidence in our review of the court’s suppression
decision only to be confronted by the evidence in our consideration of whether
the error was harmless.  Tex. R. App. P.
81(b)(2).

 

Id.

 

          Thus, because Kearney did
not object when the State reintroduced the voluntariness issue and participated
in the relitigation of the issue in its cross-examinations of Neveu and Melnyk
and in closing argument, we may properly consider Neveu’s and Melnyk’s trial
testimony in our review of the trial court's suppression determination.  See
id.

          Kearney’s argument for his second and third issues is that his
confession was involuntary per se because of his presumably incapacitated
condition after being shot and treated, which he claims raised evidence of
involuntariness.  He also asserts that the police interrogation was “improper”
as a matter of law.  Kearney cites no authority that supports his position,[2] and his argument rests entirely on
the fact that Neveu did not confer with medical personnel about Kearney’s condition before he obtained the confession.  Instead, he complains that Neveu’s
subjective, lay opinion testimony was insufficient to controvert Kearney’s presumably incapacitated condition that allegedly raised voluntariness.

          Kearney additionally asserts that his condition raised
reliability questions on his ability to understand his Miranda warnings
and to waive his constitutional rights.

An inquiry into the waiver of Miranda
rights “has two distinct dimensions.”  First, the waiver must be “voluntary in
the sense that it was the product of a free and deliberate choice rather than
intimidation, coercion, or deception.”  Second, the waiver must be made “with a
full awareness both of the nature of the right being abandoned and the
consequences of the decision to abandon it.”  . . .  Intoxication, for example,
is but one relevant factor to consider in determining whether an accused
understood his rights.

 

Ripkowski v. State, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001) (footnotes omitted).

 

          Citing Ford v. State
for the proposition that Neveu’s subjective opinion that Kearney’s statement
was voluntary could not establish that Kearney was capable of understanding the
Miranda warnings and giving a voluntary confession, Kearney argues that
the State was required to present objective medical evidence about Kearney’s condition.  Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005).  There
the court held that in a reasonable-suspicion analysis, mere opinions of an
officer are ineffective substitutes for specific, articulable facts, and the
record must include objective facts that support the officer’s suspicion.  Id. at 493-94.  Kearney cites no other authority that the State was required to
present expert medical testimony about his condition at the time of his
confession, and we agree with the State that Jackson v. Denno does not
require it.  And while we doubt the applicability of the Terry-stop
analysis in Ford to police-officer testimony in a Jackson v. Denno
hearing, Neveu’s testimony was supported by objective evidence consisting of Kearney’s medical records and the taped confession.

          Kearney’s medical records
reflect superficial gunshot wounds and an overnight hospital stay.  On the
taped confession (which we have reviewed), Kearney was able to understand the Miranda
warnings and Neveu’s questions; he even chooses not to answer a question, which
is evidence that he not only understood the question, but understood that he had
a right not to answer it.  Viewing the evidence in the light most favorable to
the trial court’s ruling, we agree with the State that Kearney did not present
evidence that raised a voluntariness question and that voluntariness was not
raised as a matter of law.  Furthermore, based on the evidence discussed above
viewed in the light most favorable to the ruling, the trial court did not abuse
its discretion in finding voluntariness by a preponderance of the evidence.  We
overrule issues two, three, and four.

Conclusion

          Having overruled Kearney’s four
issues, we affirm the trial court’s judgment.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed November 2, 2005

Publish

[CRPM]









    [1]       The
voluntariness issue was not submitted to the jury.





    [2]       He
does cite the factual scenario in Jackson v. Denno as support for the
proposition that voluntariness was raised as a matter of law, but a closer
analysis of that case belies Kearney’s argument.  The evidence in Jackson v.
Denno included a crucial dispute on the issue of police coercion.  In that
case the defendant Jackson, while being treated for a serious gunshot wound,
admitted to a robbery and to shooting a police officer.  Jackson claimed that
his state court murder conviction was invalid because it was founded on a
confession that was not properly determined to be voluntary.  The Supreme Court
concluded that Jackson was entitled to a state court hearing to determine the
voluntariness of his confession, but its conclusion was not based merely on Jackson’s medical condition:

 

This is not a case where the facts concerning
the circumstances surrounding the confession are undisputed and the task is
only to judge the voluntariness of the confession based upon the clearly
established facts and in accordance with proper constitutional standards.  Here
there are substantial facts in dispute: Jackson said that he was in pain from
his wounds, gasping for breath and unable to talk long.  A state witness described
 Jackson as in strong condition despite his wounds.  According to Jackson, the police told him he could have no water and would not be left alone until he
gave the answers the authorities desired.  These verbal threats were denied by
the State.  Whereas Jackson claimed his will was affected by the drugs
administered to him, the State's evidence was that the drugs neither had nor
could have had any effect upon him at all.  Whether Jackson is entitled to
relief depends upon how these facts are resolved, for if the State is to be
believed we cannot say that Jackson’s confession was involuntary, whereas if Jackson’s version of the facts is accepted the confession was involuntary and inadmissible.

 

Jackson v. Denno, 378 U.S. 368, 391-92, 84 S.Ct. 1774, 1789, 12 L.Ed.2d 908 (1964).