THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
 Lucius Staten, Appellant.
 
 
 

Appeal From Richland County
Henry L. McKellar, Circuit Court Judge

Unpublished Opinion No. 2005-UP-163
Heard February 9, 2005  Filed March 7, 2005

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia; and Solicitor Warren Blair Giese, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Lucius Staten appeals his conviction for lynching in the first degree.  He argues the trial court erred in (1) admitting a prior statement by the decedent; (2) barring evidence regarding an alleged confession; and (3) refusing to charge the jury on the law of mere association and mere suspicion.  We affirm.
FACTUAL/PROCEDURAL BACKGROUND
On January 15, 2001, Phillip Lee, Jr., a student of Benedict College and a reputed gang member of the Crips, was gunned down on Benedicts campus.  Brothers Lucius and Dushun Staten were indicted for the offenses of murder and lynching in the first degree for this crime.  They were tried together in 2002.  The jury found Dushun and Lucius guilty of lynching in the first degree, but only Dushun guilty of murder.[1]  The trial court sentenced Lucius to fifteen years, suspended upon the service of eight years for lynching.  The court sentenced Dushun to thirty years for murder and ten years for lynching, to run concurrently.
STANDARD OF REVIEW
In criminal cases, the appellate court sits to review errors of law only.  State v. Wilson, 345 S.C. 1, 545 S.E.2d 827 (2001); State v. Wood, Op. No. 3900 (S.C. Ct. App. filed December 6, 2004) (Shearouse Adv. Sh. No. 47 at 74).  This court is bound by the trial courts factual findings unless they are clearly erroneous.  State v. Quattlebaum, 338 S.C. 441, 527 S.E.2d 105 (2000); State v. Landis, 362 S.C. 97, 606 S.E.2d 503 (Ct. App. 2004).  The appellate court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial judges ruling is supported by any evidence.  State v. Mattison, 352 S.C. 577, 575 S.E.2d 852 (Ct. App. 2003).  A trial courts ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error that results in prejudice to the defendant.  State v. McLeod, 362 S.C. 73, 606 S.E.2d 215 (Ct. App. 2004); State v. Adams, 354 S.C. 361, 580 S.E.2d 785 (Ct. App. 2003).  An abuse of discretion occurs when the trial courts ruling is based on an error of law.  State v. Horton, 359 S.C. 555, 598 S.E.2d 279 (Ct. App. 2004).
The appellate court should examine the record to determine whether there is any evidence to support the trial courts ruling.  See Wilson, 345 S.C. at 6, 545 S.E.2d at 829.  If there is any evidence in the record, the appellate court should affirm.  Id.
LAW/ANALYSIS
I.  Statement Made by the Decedent
Lucius claims the trial court erred in admitting Andrew Britts testimony that Lee told him that Dushun pulled a gun on him shortly prior to the incident.  We disagree.
Andrew Britt, Lees cousin and Benedict roommate, testified that on the evening before the shooting, Lee, normally a very calm, laid back kind of person, arrived in his dorm room very hysterical and like scared.  Britt asked: Phil, whats wrong with you?  Though Lee avoided answering Britts questions for a while, Lee eventually confessed that they just pulled a . . . gun on me.  When Britt asked who pulled the gun on him, Lee declared: The niggers we had a[n] argument with on Saturday.[2]
Dushun timely objected to this testimony based on the hearsay rule, but the trial court overruled the objection.  Later, on cross-examination by Luciuss attorney, Britt stated that Lee actually said, The small kid pulled out a gun and asked . . . whats up now.  Britt believed Lee was specifically referring to the little brother, Dushun.
A.  Issue Preservation
Initially, we note that Lucius did not object to the hearsay statements during Britts testimony.  Thus, the trial court did not have an opportunity to rule upon the objection.  It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.  See State v. Perez, 334 S.C. 563, 514 S.E.2d 754 (1999); State v. Adams, 354 S.C. 361, 580 S.E.2d 785 (Ct. App. 2003).  Furthermore, although Dushun objected, an appellant may not preserve an issue for appeal by way of a co-defendants objection.  See State v. Carriker, 269 S.C. 553, 555, 238 S.E.2d 678, 678 (1977) (While appellants co-defendant did object, the appellant may not utilize the objection of another defendant to gain review.); State v. Brannon, 347 S.C. 85, 552 S.E.2d 773 (Ct. App. 2001) (stating appellant may not bootstrap an issue for appeal by way of a co-defendants objection).  Accordingly, this issue may not have been properly preserved.
B.  Efficacy of Crawford v. Washington[3]
The Confrontation Clause of the Sixth Amendment guarantees an accused the right to be confronted with the witnesses against him in a criminal prosecution.  U.S. Const. amend. VI.  The provision is applicable to the states under the Fourteenth Amendment.  Pointer v. Texas, 380 U.S. 400 (1965).  The South Carolina constitution provides the same protection to a defendant.  S.C. Const. art. I, § 14.
The right of confrontation is essential to a fair trial in that it promotes reliability in criminal trials and ensures that convictions will not result from testimony of individuals who cannot be challenged at trial.  California v. Green, 399 U.S. 149 (1970); State v. Gillian, 360 S.C. 433, 602 S.E.2d 62 (Ct. App. 2004).  The Confrontation Clause guarantees the accused the right to confront those testifying against him in court and further defines the scope of the admissibility of statements against him made by witnesses out-of-court.  See Coy v. Iowa, 487 U.S. 1012 (1988).  A defendant exercises his right of confrontation through cross-examination, which has been described as the greatest legal engine ever invented for the discovery of truth.  Green, 399 U.S. at 158 (internal quotations omitted).
For nearly twenty-five years, the question of whether an unavailable witnesss prior statements could be used against a criminal defendant at trial was governed by Ohio v. Roberts, 448 U.S. 56 (1980):

[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable.  Even then, his statement is admissible only if it bears adequate indicia of reliability.  Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

Id. at 66.  Thus, under Roberts, an unavailable witnesss out-of-court statement was admissible if it: (1) fell within a firmly rooted exception to the hearsay rule; or (2) contained such particularized guarantees of trustworthiness that adversarial testing of the statement through cross-examination would add little to the assessment of the reliability of the evidence.
In March 2004, the Supreme Court concluded that the long-standing Roberts rule was untenable.  The Court, in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004), announced a new test to determine the admissibility under the Confrontation Clause of hearsay offered against the accused.  Crawford was convicted of assault and attempted murder.  Over his confrontation objection, the prosecution was allowed to offer a recorded statement his wife made to the police in which she appeared to contradict Crawfords claim that he attacked the victim in self-defense. Because the wife herself was under suspicion of facilitating the assault, her statement was admitted for its truth under Washingtons hearsay exception for declarations against penal interest.  This exception required the prosecution to show that the declarant was unavailable to testify, and due to that unavailability, Crawford did not have an opportunity to cross-examine his wife about her out-of-court statement. The Court reversed Crawfords conviction.  Crawford changes the Courts previous confrontation analysis.
 Crawford traced the development of Confrontation Clause jurisprudence, beginning with English common law and extending to recent decisions made by state and federal courts throughout the country.  As a threshold matter, the Supreme Courts analysis identified the principal evil which the Confrontation Clause was intended to deter, the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.  Id. at    , 124 S.Ct. at 1363.  The Court rejected the view that the regulation of out-of-court statements could be accomplished solely by the rules of evidence.  Id. at    , 124 S.Ct. at 1364.
The Crawford Court clarified the Confrontation Clause applies to witnesses against the accusedin other words, those who bear testimony.  Id. at    , 124 S.Ct. at 1364.  Testimony is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact.  Id. (internal quotations omitted).  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.  Id.
With respect to testimonial hearsay, at least, the Supreme Court overruled its previous decision in Roberts to maintain consistency with the Framers intent.  Id. at    , 124 S.Ct. at 1374; see also Thomas J. Reed, Crawford v. Washington and the Irretrievable Breakdown of a Union: Separating the Confrontation Clause from the Hearsay Rule, 56 S.C. L. Rev. 185, 216 (2004) (In Crawford v. Washington, the United States Supreme Court finally overruled Ohio v. Roberts, divorcing the Confrontation Clause and the hearsay rule because of an irreconcilable breakdown of the relationship.) (footnotes omitted).  The unpardonable vice of the Roberts test is its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude.  Id. at    , 124 S.Ct. at 1371.  The Court concluded:

Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers design to afford the States flexibility in their development of hearsay law--as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.  Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

Id. at ___, 124 S.Ct. at 1374.
In rejecting the Roberts indicia of reliability test, the Court held that the Sixth Amendment bars an out-of-court statement by a witness that is testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him.  Id. at ___, 124 S.Ct. at 1374.  Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.  Id. at    , 124 S.Ct. at 1374.  For testimonial statements, the Court figuratively erected a stop sign as to admissibility in the absence of confrontation.  Robert P. Mosteller, Crawford v. Washington: Encouraging and Ensuring the Confrontation of Witnesses, 39 U. Rich. L. Rev. 511, 525 (2005).  For statements in this category, [Crawford] firmly rejected the reliability or trustworthiness mode of analysis adopted by Ohio v. Roberts.  Id.  
The Court decided to leave for another day any effort to spell out a comprehensive definition of testimonial.  Crawford, 541 U.S. at ___, 124 S.Ct. at 1374.  However, the Court provided three formulations of [the] core class of testimonial statements:

Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. . . . .
Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.

Id. at    , 124 S.Ct. at 1364 (citations omitted).  Although the Court declined to settle on a single formulation, it noted: Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.  These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.  Id. at ___, 124 S.Ct. at 1374.  In contrast to these examples, casual statements to an acquaintance are not testimonial.  Id. at ___, 124 S.Ct. at 1364.  Further, business records or statements in furtherance of a conspiracy are nontestimonial.  Id. at ___, 124 S.Ct. at 1367.
C.  Testimonial vs. Nontestimonial
In the wake of the Crawford decision, the crucial inquiry is whether a particular statement is testimonial or nontestimonial.  Many courts are grappling with the distinction Crawford created between testimonial and nontestimonial hearsay.  See United States v. Saget, 377 F.3d 223 (2d Cir. 2004); United States v. Corley, 348 F. Supp. 2d 970 (N.D.Ind. 2004); Thomas J. Reed, Crawford v. Washington and the Irretrievable Breakdown of a Union: Separating the Confrontation Clause from the Hearsay Rule, 56 S.C. L. Rev. 185 (2004).  In determining whether a statement is testimonial or non-testimonial, courts are consistently applying the Crawford two-pronged analysis to otherwise admissible hearsay statements: (1) Was the statement made to a governmental agent (or in response to questioning from a governmental agent)? (2) Would the declarant expect his/her statement to later be used at trial?  Allie Phillips, A Flurry of Court Interpretations: Weathering the Storm after Crawford v. Washington, 38-Dec Prosecutor 37 (Nov/Dec 2004).
1.  Testimonial Statements
Courts are attempting to define the types of hearsay that constitute testimonial statements.  The Colorado Court of Appeals explained that testimonial statements under Crawford will generally be (1) solemn or formal statements (not casual or off-hand remarks); (2) made for the purpose of proving or establishing facts in judicial proceedings (not for business or personal purposes); (3) to a government actor or agent (not to someone unassociated with government activity).  People v. Compan, 100 P.3d 533 (Colo. Ct. App. 2004), cert. granted (Oct. 25, 2004).  [S]tatements cited by the [Crawford] Court as testimonial share certain characteristics; all involve a declarants knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings.  United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004); see also United States v. Saner, 313 F. Supp. 2d 896 (S.D.Ind. 2004) (holding statements made in response to questioning outside of the courtroom by Department of Justice prosecutor were testimonial).  The Supreme Court of Georgia, in Moody v. State, 594 S.E.2d 350 (Ga. 2004), held that police interrogations, as delineated in Crawford as testimonial, include the field investigation of witnesses shortly after the commission of a crime.  Id. at 354 n.6; cf. Hiibel v. Sixth Judicial Dist. Court of Nevada, 124 S.Ct. 2451, 2463 (2004) (Stevens, J., dissenting) (Surely police questioning during a Terry stop qualifies as an interrogation, and it follows that responses to such questions are testimonial in nature.).
United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004), found that [a] statement made knowingly to the authorities that describes criminal activity is almost always testimonial and thus concluded that the confidential informants statement to the police wherein the CI implicated the defendant in criminal activity constituted testimonial hearsay.  The Sixth Circuit Court of Appeals further noted that statements made to the authorities, who will use them in investigating and prosecuting a crime, made with the full understanding that the statements will be so used, are testimonial.
If an out-of-court statement is taken by a government agent (police officer, prosecutor, child protective services worker employed by the state), the statement will be considered testimonial so long as the witness reasonably could expect that statement to be used at a later trial.  Phillips, 38-Dec Prosecutor at 37.
In United States v. Nielsen, 371 F.3d 574 (9th Cir. 2004), the defendants girlfriend made statements to the police that incriminated the defendant during the service of a search warrant at their mutual residence.  The police asked the girlfriend who had access to the floor safe where the methamphetamine was found.  She replied that the defendant did.  The Ninth Circuit Court of Appeals found the statements were testimonial.
United States v. McClain, 377 F.3d 219 (2d Cir. 2004), discussed the testimonial aspect of a plea allocution: In light of [the] examples cited by the [Crawford] Court as testimonial, it is clear that a plea allocution constitutes testimony, as it is formally given in court, under oath, and in response to questions by the court or the prosecutor.  Id. at 221; see also People v. Woods, 779 N.Y.S.2d 494 (N.Y. App. Div. 2004) (finding that admission of robbery accomplices plea allocution into evidence, following accomplices refusal to testify on constitutional grounds, violated defendants Sixth Amendment confrontation rights because plea allocutions are among the core testimonial statements that the Confrontation Clause plainly meant to exclude).
City of Las Vegas v. Walsh, 91 P.3d 591 (Nev. 2004), recognized that an affidavit prepared by a registered nurse, in connection with the drawing of blood for use in evidence regarding intoxication, was testimonial, despite the nurses apparent private status.  The Supreme Court of Nevada emphasized that such an affidavit is prepared solely for the prosecutions use at trial.  Id. at 595.
2.  Nontestimonial Statements
Courts are beginning to formulate case law defining what nontestimonial statements entail.  [S]tatements made to family, friends, and acquaintances without an intention for use at trial have consistently been held not to be testimonial, even if highly incriminating to another.  Robert P. Mosteller, Crawford v. Washington: Encouraging and Ensuring the Confrontation of Witnesses, 39 U. Rich. L. Rev. 511, 540 (2005).  Private conversations between confidants have been found to be nontestimonial.
In United States v. Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004), the Eighth Circuit Court of Appeals ruled that Crawford was inapplicable because the statements were made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which Crawford speaks.
State v. Blackstock, 598 S.E.2d 412 (N.C. Ct. App. 2004), involved extended statements made by a victim fatally shot during a robbery to his wife and daughter while in the hospital.  The Court of Appeals of North Carolina concluded the statements were nontestimonial.  The statements were made during personal conversations that took place at the hospital over a series of several days after the shooting and at a time when the victims physical condition was improving and therefore would not have been anticipated by him to be used prosecutorially.
In State v. Rivera, 844 A.2d 191 (Conn. 2004), an unavailable declarants statement to his nephew, admitting his participation with defendant in a burglary that had given rise to a homicide, was found to be nontestimonial because it failed under the most expansive test articulated by Crawford: an objective witness would not reasonably believe that the statement would be available for use at a later trial.  The declarant made the statement in confidence and on his own initiative to a close family member, almost eighteen months before the defendant was arrested and more than four years before his own arrest.  The Supreme Court of Connecticut held: In light of these circumstances, [the declarants] communication to . . . his nephew clearly does not fall within the core category of ex parte testimonial statements that the court was concerned with in Crawford.  Id. at 202.
In People v. Shepherd, 689 N.W.2d 721 (Mich. Ct. App. 2004), the codefendant had made spontaneous, unprompted statements to his relatives about his role in an offense.  The statements were made in a custodial setting and were overheard by jail guards.  The Court of Appeals of Michigan explained the statements were not testimonial in nature, stating the declarant could not have reasonably believed that the statements would later be used at a trial.
The Supreme Court of Georgia, in Demons v. State, 595 S.E.2d 76 (Ga. 2004), articulated that a murder victims statements to his friend, made during an incident involving the defendant several weeks prior to the murder, to the effect that the defendant was going to kill him, were not testimonial in nature.  Thereafter, the court addressed a similar issue in Watson v. State, 604 S.E.2d 804 (Ga. 2004), and found statements that an alleged murder victim made to three close friends over approximately ten years were not testimonial.  The statements concerned threats by the defendant and episodes of physical and mental abuse.
In People v. Cervantes, 12 Cal. Rptr. 3d 774 (Cal. Ct. App. 2004), evidence of one defendants incriminating hearsay statement, which also implicated codefendants in a murder prosecution, was nontestimonial.  The declarant made the statement to a friend of long standing in the context of a request for medical assistance from the friend, and, given that the friend was afraid to testify since she knew that all the defendants were gang members, the statement was made without any reasonable expectation that it would be used at a later trial.
In People v. Griffin, 93 P.3d 344, 369 (Cal. 2004), the Supreme Court of California held a child murder victims statement to a school friend made on the day that the crime occurred that the defendant had been fondling her for some time and that [the victim] intended to confront him if he continued was not testimonial.
The Court of Criminal Appeals of Texas, in Woods v. State, 152 S.W.3d 105 (Tex. Crim. App. 2004), analyzed the co-defendants out-of-court statements to two acquaintances, indicating his involvement in murders with the defendant.  The court recognized the statements were casual remarks that he spontaneously made to acquaintances.  They were street corner statements that the co-defendant made to friends without any motive to shift blame to another or minimize his own involvement in the murders.  The court found the statements were nontestimonial in nature.
In People v. Compan, 100 P.3d 533 (Colo. Ct. App. 2004), cert. granted (Oct. 25, 2004), the Colorado Court of Appeals concluded that statements of a non-testifying domestic violence victim to her friend immediately after the attack did not qualify as testimonial.  Subsequently, the court decided People v. Garrison, No. 01CA0527, 2004 WL 2278287 (Colo. Ct. App. 2004).  In Garrison, the court determined the murder victims hearsay statements to his training manager that an old friend was threatening to kill him were not testimonial. Thus, admission of the statements did not violate the defendants right of confrontation.  The statements were not made to the police, and there was no indication that the training manager was acting as a police agent.
Horton v. Allen, 370 F.3d 75 (1st Cir. 2004), amplified that a statement, admitted under the state of mind hearsay exception, that on the day of the murders defendants accomplice had told a witness that he needed money and that the victim had refused to give him drugs on credit, was nontestimonial.  The First Circuit Court of Appeals emphasized the accomplices statements were made during a private conversation with the witness.  In short, [the accomplice] did not make the statements under circumstances in which an objective person would reasonably believe that the statement would be available for use at a later trial.  Id. at 84.
Parle v. Runnels, 387 F.3d 1030 (9th Cir. 2004), clarified that an unavailable declarants diary entries were nontestimonial.  The diary was not created under circumstances which would lead an objective witness reasonably to believe that [it] would be available for use at a later trial.  Id. at 1037.
United States v. Hendricks, 395 F.3d 173 (3d Cir. 2005), expounded that surreptitiously monitored private conversations and statements contained in Title III wiretap recordings are not testimonial statements for purposes of Crawford.  The Third Circuit Court of Appeals noted: (1) the recorded conversations neither fell within nor were analogous to any of the specific examples of testimonial statements mentioned by the Crawford Court; (2) each of the examples referred to by the Crawford Court or the definitions it considered entails a formality to the statement absent from the recorded statements in Hendricks; (3) the Title III recordings cannot be deemed testimonial as the speakers certainly did not make the statements thinking that they would be available for use at a later trial; and (4) the very purpose of Title III intercepts is to capture conversations that the participants believe are not being heard by the authorities and will not be available for use in a prosecution.
The status of 911 calls has been addressed by the courts.  In People v. Moscat, 777 N.Y.S.2d 875 (N.Y. Crim. Ct. 2004), the court determined that a 911 call is not testimonial because it is typically initiated by the witness looking for assistance rather than by the police summoning a witness to provide evidence.  People v. Conyers, 777 N.Y.S.2d 274, 277 (N.Y. Sup. Ct. 2004), held that a callers statements were nontestimonial because her intention in placing the 911 calls was to stop the assault in progress and not to consider the legal ramifications of herself as a witness in a future proceeding.  Cf. People v. Cortes, 781 N.Y.S.2d 401, 415 (N.Y. Sup. Ct. 2004) (reasoning that statements about an ongoing shooting made by a witness during a 911 call amounted to testimonial evidence because the information was elicited by 911 operators use of an accepted pattern of questioning for the purpose of investigation, prosecution, and potential use at judicial proceedings; an objective reasonable person knows that when he or she reports a crime the statement will be used in an investigation and at proceedings relating to a prosecution.).
The Court of Appeals of Washington, in State v. Powers, 99 P.3d 1262 (Wash. Ct. App. 2004), rejected a bright line rule that all 911 recordings are nontestimonial, opting instead to employ a case-by-case analysis into whether statements contained on a 911 recording originated from interrogation.
The Court of Appeals of Minnesota concluded statements made by the victims during their 911 call were not testimonial statements and, thus, were admissible in the assault trial despite the victims unavailability at trial and the defendants lack of prior opportunity to cross-examine the victims.  State v. Wright, 686 N.W.2d 295 (Minn. Ct. App. 2004), review granted (Nov. 23, 2004).  The statements in Wright were made moments after the assault while the victims were struggling for self-control and survival, no evidence suggested the call was handled by the 911 operator under formalized protocol, and the victims were providing information for immediate intervention and not for eventual prosecution.  Wright inculcated:

[T]hese statements do not fit within the definitions or the examples of testimonial statements.  A 911 call is usually made because the caller wants protection from an immediate danger, not because the 911 caller expects the report to be used later at trial with the caller bearing witnessrather, there is a cloak of anonymity surrounding 911 calls that encourages citizens to make emergency calls and not fear repercussion.

Id. at 302.
A number of courts have found that statements made for the purpose of medical diagnosis or treatment are nontestimonial.  In State v. Vaught, 682 N.W.2d 284 (Neb. 2004), a four-year-old victim of sexual abuse informed a physician during a medical examination about the identity of the defendant.  The Supreme Court of Nebraska decided the statements by the child to the physician were nontestimonial.  The court explicated:

[T]he victims identification of Vaught as the perpetrator was a statement made for the purpose of medical diagnosis or treatment.  In the present case, the victim was taken to the hospital by her family to be examined and the only evidence regarding the purpose of the medical examination, including the information regarding the cause of the symptoms, was to obtain medical treatment.  There was no indication of a purpose to develop testimony for trial, nor was there an indication of government involvement in the initiation or course of the examination.

Id. at 291.  In State v. Scacchetti, 690 N.W.2d 393 (Minn. Ct. App. 2005), the Court of Appeals of Minnesota ruled a three-year-old victims out-of-court statements to her examining physician that defendants penis touched her vaginal and anal openings, together with videotaped statements during her conversation with the physician that defendant put his hands right in there, referring to her anal opening, were not testimonial.  Admission of the statements in a criminal sexual conduct trial did not violate the defendants right of confrontation where they were made in response to questions by the physician for purposes of medical diagnosis and the physician was not working on behalf of law enforcement for the purpose of developing a case against the defendant.
In re T.T., 815 N.E.2d 789 (Ill. App. Ct. 2004), reasoned that a victims statements to medical personnel regarding descriptions of the cause of symptoms, pain or sensations, or the inception or general character of the cause or external source thereof are not testimonial in nature where such statements do not accuse or identify the perpetrator of the assault.
The Court of Appeals of Michigan concluded admission of the child victims statement through the testimony of the executive director of the local Childrens Assessment Center, a private organization, did not violate the defendants right to confront his accuser in a trial for criminal sexual conduct.  People v. Geno, 683 N.W.2d 687 (Mich. Ct. App. 2004).  The statement did not constitute testimonial evidence, as it was not made to a government employee, and the childs answer to the question whether she had an owie was not a statement in the nature of ex parte in-court testimony or its functional equivalent.  Id.
Courts have discussed the nontestimonial nature of various reports.  The Court of Criminal Appeals of Alabama held an autopsy report showing the cause of death of a homicide victim was not testimonial.  Perkins v. State, CR-02-1779, 2004 WL 923506 (Ala. Crim. App. 2004).  The Supreme Court of New Mexico, in State v. Dedman, 102 P.3d 628 (N.M. 2004), declared a blood alcohol report showing the defendants blood alcohol level at the time of the vehicle accident was nontestimonial for purposes of determining whether admission of the report, without testimony of the nurse who drew the blood sample, violated the defendants Sixth Amendment right to confrontation in a prosecution for aggravated driving while under the influence of intoxicating drugs.  The report was generated by State laboratory personnel, not law enforcement, and the report was not investigative or prosecutorial.
Co-conspirator statements have been found to be nontestimonial.  See, e.g., United States v. Reyes, 362 F.3d 536 (8th Cir. 2004) (stating that Crawford does not apply to co-conspirator statements because they are nontestimonial).  In United States v. Saget, 377 F.3d 223 (2d Cir. 2004), the Second Circuit Court of Appeals determined a co-conspirators statements against the defendant to a confidential informant, whose true status was unknown to the co-conspirator, were not testimonial.  Noting Crawfords specific caveat that it only pertains to testimonial statements, the court pointed out that the co-conspirator had no knowledge of the confidential informants connection to investigators and believed that he was having a casual conversation with a friend and potential co-conspirator.  Id.  In fact, all circuits that have considered this issue with respect to co-conspirators have reached a similar conclusion.  See, e.g., Horton v. Allen, 370 F.3d 75 (1st Cir. 2004); United States v. Lee, 374 F.3d 637 (8th Cir. 2004); People v. Cook, 815 N.E.2d 879 (Ill. App. Ct. 2004); Thomas J. Reed, Crawford v. Washington and the Irretrievable Breakdown of a Union: Separating the Confrontation Clause from the Hearsay Rule, 56 S.C. L. Rev. 185 (2004); see also Williams v. SCI-Huntingdon, No. Civ.A. 02-CV-7693, 2004 WL 2203734, at *11 n.7 (E.D.Pa. Sept. 30, 2004) (an off-hand, overheard remark to an acquaintance, such as . . . one made by [a] co-conspirator . . ., is outside the scope of Crawford and thus does not violate the Confrontation Clause.).
Some courts have examined what encompasses interrogation within the meaning of Crawford.  In Fowler v. State, 809 N.E.2d 960 (Ind. Ct. App. 2004), transfer granted (Dec. 9, 2004), the Court of Appeals of Indiana ruled that when police arrive at the scene of an incident in response to a request for assistance and begin informally questioning those nearby immediately thereafter in order to determine what has happened, statements given in response thereto are not testimonial.  The court observed that what constitutes a testimonial statement is the official and formal quality of such a statement.  The court noted that Crawford chose not to say that any police questioning of a witness would make a statement in response thereto testimonial.  Rather, Crawford expressly limited its holding to police interrogation.  The court stated: Whatever else police interrogation might be, we do not believe that word applies to preliminary investigatory questions asked at the scene of a crime shortly after it has occurred.  Id. at 964.
In People v. Corella, 18 Cal. Rptr. 3d 770, 776 (Cal. Ct. App. 2004), the California Court of Appeal illuminated:

Preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an interrogation.  Such an unstructured interaction between officer and witness bears no resemblance to a formal or informal police inquiry that is required for a police interrogation [that results in inadmissible testimonial hearsay].

The Supreme Judicial Court of Maine, in State v. Barnes, 854 A.2d 208 (Me. 2004), found to be nontestimonial statements that were made by the murder defendants mother (the victim) to police officers at the station house where she went after an earlier assault by her son.  The interaction did not involve structured police interrogation triggering the cross-examination requirement of the Confrontation Clause in admitting the officers testimony regarding the mothers statements.  The mother went to the police station on her own, her statements to the officers were made when she was still under the stress of the alleged assault by the defendant, and officers were not questioning her regarding known criminal activity.
In State v. Forrest, 596 S.E.2d 22 (N.C. Ct. App. 2004), the Court of Appeals of North Carolina concluded a crime victims statements to an officer made shortly after she was rescued from a kidnapping and assault by the police were not testimonial.  The statements were made immediately after the rescue and with no time for reflection or thought on the victims part and were initiated spontaneously by the victim.  The victim was not (1) providing a formal statement, deposition, or affidavit; (2) aware she was bearing witness; or (3) aware her utterances might impact further legal proceedings.  Id. at 27; see also People v. Newland, 775 N.Y.S.2d 308, 309 (N.Y. App. Div. 2004) ([A] brief, informal remark to an officer conducting a field investigation, not made in response to structured police questioning should not be considered testimonial.); People v. Mackey, 785 N.Y.S.2d 870 (N.Y. Crim. Ct. 2004) (stating responses to police officers during a preliminary field investigation are not barred as testimonial statements under Crawford if the statements and the circumstances in which they were made lack the requisite formality to constitute a police interrogation).
Various jurisdictions have addressed the status of excited utterances as nontestimonial.  In People v. King, No. 02CA0201, 2005 WL 170727, at *5 (Colo. Ct. App., Jan 27, 2005), the Colorado Court of Appeals elucidated:

[C]lassification of a statement as an excited utterance, while not dispositive, supports a conclusion that a statement is nontestimonial.  An excited utterance by definition is one made before the declarant has had an opportunity to reflect on the event.  Therefore, it is consistent with the definition of an excited utterance to conclude that it is not a statement which a declarant would reasonably believe at the time it was made might later be used at trial.

In Hammon v. State, 809 N.E.2d 945 (Ind. Ct. App. 2004), transfer granted (Dec. 9, 2004), the victim made a number of excited utterances to police officers at the scene of the crime, in response to preliminary police questions.  In concluding these excited utterances did not constitute testimonial statements, the Court of Appeals of Indiana declared:

[T]he very concept of an excited utterance is such that it is difficult to perceive how such a statement could ever be testimonial.  The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful. . . . An unrehearsed statement made without time for reflection or deliberation, as required to be an excited utterance, is not testimonial in that such a statement, by definition, has not been made in contemplation of its use in a future trial.

Id. at 952-53 (citations omitted).
A number of courts dealing with excited utterances have taken the approach of analyzing the intent of the declarant and determining whether the recipient of the excited utterance questions the declarant.  See Allie Phillips, A Flurry of Court Interpretations: Weathering the Storm after Crawford v. Washington, 38-Dec Prosecutor 37 (Nov/Dec 2004).  For example, if a declarant provides an excited utterance that is simply a cry for help or for medical treatment, and if the witness would not reasonably expect the statement to be used in a prosecutorial manner at the time the utterance is made, then those utterances are being declared nontestimonial and are subject to a traditional hearsay analysis.  See, e.g., People v. Moscat, 777 N.Y.S.2d 875 (N.Y. Crim. Ct. 2004); State v. Forrest, 596 S.E.2d 22 (N.C. Ct. App. 2004); State v. Orndorff, 95 P.3d 406 (Wash. Ct. App. 2004).  However, if a declarant provides an excited utterance that could reasonably be expected to be used at a later trial (such as reporting a crime), or if a statement is made in response to questioning by a 911 operator, those utterances are being declared testimonial and will require the witness to testify.  Phillips, 38-Dec Prosecutor at 41.
D.  Status of Lees Statements under Crawford
The analysis of whether the admission of Lees statements violated the Confrontation Clause begins with the question of whether the statements are testimonial, triggering Crawfords per se rule against their admission.  In this case, Lees statements were not: (1) ex parte in-court testimony or its functional equivalent; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony transcripts, or confessions; or (3) taken by police officers in the course of an interrogation.  Rather, Lees statements were made during a private conversation with his cousin and roommate, Britt.  See Crawford, 541 U.S. at ___, 124 S.Ct. at 1364 (An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.).  Significantly, the decedent did not make the statements under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.  Id.  Concomitantly, Lees statements do not qualify as testimonial.
Lees statements are nontestimonial.  Consequently, their admission is outside of Crawfords scope.  See Crawford, 541 U.S. at ___, 124 S.Ct. at 1364.
E.  Applicability of Ohio v. Roberts
Justice Scalias opinion [in Crawford] hints, but does not decide, that the Confrontation Clause no longer applies to non-testimonial hearsay, and that its admission is governed by a jurisdictions hearsay rules and Roberts indicia of reliability approach.  David F. Binder, Hearsay Handbook § 7:2 (4th ed. 2004).  Most jurisdictions are leaning toward the idea that Crawford [left] the Roberts approach untouched with respect to nontestimonial statements.  United States v. Saget, 377 F.3d 223, 227 (2d Cir. 2004); see also Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004) (Thus, unless Christians statements qualify as testimonial, Crawford is inapplicable and Roberts continues to apply.); State v. Manuel, 685 N.W.2d 525, 533 (Wis. Ct. App. 2004), review granted, 689 N.W.2d 55 (Wis. 2004) ([W]e proceed, in an abundance of caution, to analyze Manuels confrontation clause claim under the Roberts analysis).
Because nontestimonial hearsay is at issue here, we apply the reliability test of Roberts to determine whether the admission of Lees hearsay statements violated Luciuss Confrontation Clause rights.
Under Ohio v. Roberts, 448 U.S. 56 (1980), for the statement to be admissible, the declarant must be unavailable, and the statement must fall within a firmly rooted hearsay exception or bear particularized guarantees of trustworthiness.  Obviously, Lees death rendered him unavailable to testify.  Therefore, we examine whether Lees statements fall within a firmly rooted hearsay exception.
Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Rule 801(c), SCRE; see also State v. Thompson, 352 S.C. 552, 558, 575 S.E.2d 77, 81 (Ct. App. 2003) (Evidence is not hearsay unless it is an out of court statement offered to prove the truth of the matter asserted.).  The rule against hearsay prohibits the admission of evidence of an out-of-court statement to prove the truth of the matter asserted unless an exception to the rule applies.  See Huggler v. State, 360 S.C. 627, 602 S.E.2d 753 (2004); State v. Weaver, 361 S.C. 73, 602 S.E.2d 786 (Ct. App. 2004); see also Rule 802, SCRE (Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute.); Rule 803, SCRE (setting out exceptions to the hearsay rule).
One exception to the hearsay rule is an excited utterance.  Rule 803(2), SCRE.  An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.  Id.  A statement that is admissible because it falls within an exception in Rule 803, such as the excited utterance exception, may be used substantively, that is, to prove the truth of the matter asserted.  State v. Sims, 348 S.C. 16, 558 S.E.2d 518 (2002); State v. Dennis, 337 S.C. 275, 523 S.E.2d 173 (1999).
The rationale behind the excited utterance exception is that the startling event suspends the declarants process of reflective thought, reducing the likelihood of fabrication.  Sims, 348 S.C. at 20, 558 S.E.2d at 521; see also State v. McHoney, 344 S.C. 85, 544 S.E.2d 30 (2001) (stating the basis for the excited utterance exception to the hearsay rule is that the perceived event produces nervous excitement, making fabrication of the statements about the event unlikely).  An excited utterance expresses the real belief of the speaker because the utterance is made under the immediate and uncontrolled domination of the senses, rather than under reason and reflection.  McHoney, 344 S.C. at 94, 544 S.E.2d at 34.  In deciding whether a statement falls within the excited utterance exception, a court must consider the totality of the circumstances.  Id.  Such a determination is left to the sound discretion of the trial court.  Sims, 348 S.C. at 21, 558 S.E.2d at 521; State v. Burdette, 335 S.C. 34, 515 S.E.2d 525 (1999).
Three elements must be met to find the statement [is] an excited utterance.  Sims, 348 S.C. at 21, 558 S.E.2d at 521.  First, the statement must relate to a startling event or condition.  Id.  Second, the statement must have been made while the declarant was under the stress of excitement.  Id.  Third, the stress of excitement must be caused by the startling event or condition.  Id. (citing Rule 803(2), SCRE).  Other factors useful in determining whether a statement qualifies as an excited utterance include the declarants demeanor, the declarants age, and the severity of the startling event.  Id. at 22, 558 S.E.2d at 521.
The statements here clearly meet the first element because they relate to the startling event of Lee having a gun pulled on him.  As for whether Lee was under the stress of excitement when he made the statements, we note that the amount of time that passed between the startling event and the time the statement was made is one of several factors to consider when deciding whether a statement is an excited utterance.  Id. at 21, 558 S.E.2d at 521.  While the passage of time between the startling event and the statement is one factor to consider, it is not the dispositive factor.  Id.  Even statements after extended periods of time can be considered an excited utterance as long as they were made under continuing stress.  Id. at 22, 558 S.E.2d at 521.  Lee, normally a calm, humble, laid back kind of person, was described by Britt as being storm, angry, storm, angry, just temper-high kind of person when he came in the room on the Sunday evening before the shooting.  Britt testified that Lee just kept walking back, walking back and forth in the room.  Just like . . . banging on stuff.  When asked what had happened, Lee replied: They just pulled a . . . gun on me. (emphasis added).  Lees demeanor and the severity of the startling event are factors that weigh in favor of finding his statements to be excited utterances.  Finally, the third element is satisfied.  The stress of excitement was caused by the startling event of Lee having a gun pulled on him.
Moreover, the fact that the statements were made in regard to questioning by Britt does not preclude their admissibility.  See United States v. Iron Shell, 633 F.2d 77 (8th Cir. 1980) (noting the single question, what happened, has been held not to destroy the excitement necessary to qualify under excited utterance exception to hearsay rule); United States v. Glenn, 473 F.2d 191 (D.C. Cir. 1972) (stating fact that excited utterance is made in response to inquiry is not decisive on issue of admissibility).
Given the totality of the circumstances, we find Lee was under the continuing stress of excitement when he told Britt they just pulled a . . . gun on me.  When Britt asked who pulled the gun on him, Lee declared: The niggers we had a[n] argument with on Saturday.  On cross-examination by Luciuss attorney, Britt stated that Lee actually said, The small kid pulled out a gun and asked . . . whats up now.  Britt believed Lee was specifically referring to the little brother, Dushun.  The trial court did not abuse its discretion in admitting Lees statements to Britt because the statements fall under the excited utterance hearsay exception.
We are not required to find any other guarantees of trustworthiness because the court will only look to this prong if a statement does not fall within a firmly rooted hearsay exception.  See State v. Dennis, 337 S.C. 275, 523 S.E.2d 173 (1999).  Lees statements constitute excited utterances.  The United States Supreme Court has held that an excited utterance is a firmly rooted exception to the hearsay rule.  See White v. Illinois, 502 U.S. 346 (1992); see also State v. Burdette, 335 S.C. 34, 45, 515 S.E.2d 525, 531 (1999) (excited utterance exception is firmly rooted in South Carolina law and satisfies the requirements of the Confrontation Clause).
The admission of Lees statements satisfies Roberts.  The trial court correctly admitted the hearsay statements.  Luciuss Confrontation Clause rights were not violated.[4]
II.  Statement Against Penal Interest by Unavailable Witness
Lucius maintains the trial court erred in excluding Michelle Buffs testimony that Maurice Sanders told her he shot the decedent.  We disagree.
A.  Relevance
For evidence to be admissible, it must be relevant.  Rules 401 & 402, SCRE; State v. Sweat, 362 S.C. 117, 606 S.E.2d 508 (Ct. App. 2004).  Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Rule 401, SCRE; State v. Pagan, 357 S.C. 132, 142, 591 S.E.2d 646, 651 (Ct. App. 2004).  Under Rule 401, evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy.  In re Care and Treatment of Corley, 353 S.C. 202, 577 S.E.2d 451 (2003); State v. Adams, 354 S.C. 361, 580 S.E.2d 785 (Ct. App. 2003).  The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion.  State v. Saltz, 346 S.C. 114, 551 S.E.2d 240 (2001).
Prior to the Statens joint trial, the State stipulated that neither Lucius nor Dushun actually shot Lee.  The State declared: [W]e are proceeding on the theory of accomplice liability . . . . Whoever the shooter is is not relevant.  Buff, the girlfriend of Limel Sims, would testify that she took Maurice Sanders to the Benedict College area to look for the gun.  In her statement to police, she revealed that, when she took him to the bus station, Sanders confessed to shooting a man at Benedict College because the guy he shot and some of his friends had jumped him at the mall.  She added that Sims confirmed Sanders shot Lee.  The trial court ruled the test for trustworthiness of the statement was not met, and the identity of the shooter was unimportant for the State to prove its case for aiding and abetting murder.
Buffs testimony was not relevant.  The trial judge did not abuse his discretion in excluding the evidence.
B.  Analysis under Rule 804(b)(3), SCRE
Nontestimonial statements against the interest of the declarant at the time when made are admissible as an exception to the hearsay rule if the declarant is unavailable and the circumstances show that a reasonable person would not have made the statement unless believing it to be true.  See Crawford v. Washington, 541 U.S. 36 (2004).  Rule 804(b)(3), SCRE, provides in pertinent part:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

                   . . . .

 
(3) Statement against interest.  A statement which was at the time of its making so far contrary to the declarants pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarants position would not have made the statement unless believing it to be true. . . . .
 

The declaration against penal interest exception has been applied to the determination of whether a third party committed the crime charged instead of the defendant in a criminal case.  See State v. Doctor, 306 S.C. 527, 413 S.E.2d 36 (1992).  An abuse of discretion standard is applied to a trial judges ruling on the issue of whether a statement is admissible as a declaration against penal interest.  State v. Forney, 321 S.C. 353, 468 S.E.2d 641 (1996).
However, [a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.  Rule 804(b)(3), SCRE; see also McClain v. Anderson Free Press, 232 S.C. 448, 468, 102 S.E.2d 750, 760 (1958) (Oxner, J., concurring).  A defendant seeking to offer a hearsay statement against interest bears the formidable burden of establishing that corroborating circumstances clearly indicate the trustworthiness of the statement.  State v. Wannamaker, 346 S.C. 495, 552 S.E.2d 284 (2001).  Exculpatory evidence that is not corroborated with other evidence that clearly shows its trustworthiness is excluded.  Forney, 321 S.C. at 359-60, 468 S.E.2d at 645; State v. McKnight, 321 S.C. 230, 234, 467 S.E.2d 919, 921-22 (1996).  Whether a statement has been sufficiently corroborated is a question left to the discretion of the trial judge after considering the totality of the circumstances under which a declaration against penal interest was made.  State v. McDonald, 343 S.C. 319, 540 S.E.2d 464 (2000); State v. Kinloch, 338 S.C. 385, 526 S.E.2d 705 (2000).
Rule 804(b)(3) does not require that the information within the statement be clearly corroborated, it means only that there be corroborating circumstances which clearly indicate the trustworthiness of the statement itself, i.e., that the statement was actually made.  Kinloch, 338 S.C. at 389, 526 S.E.2d at 707.  The corroboration requirement goes not to the truth of the statements contents, but rather to the making of the statement.  McDonald, 343 S.C. at 323, 540 S.E.2d at 466.  The corroboration requirement is a preliminary determination as to the statements admissibility, not an ultimate determination about the statements truth.  Kinloch, 338 S.C. at 389, 526 SE.2d at 707.
In State v. McKnight, evidence offered by a witness with a motive to testify against the alleged declarant was held not sufficiently trustworthy:

First, the declarant in this case, Willie, was available to testify. . . . Moreover, Willie did not exercise any fifth amendment privilege against self-incrimination.
Second, no corroborating evidence existed which clearly indicated the trustworthiness of Willies statement against penal interest.  On the contrary, the evidence presented during the in camera hearing severely undermined that statements trustworthiness.  Belser admitted that he felt Willie had wrongly put the blame on him for crimes actually committed by Willie. This statement suggested that Belser had a possible motive for attributing Chandlers murder to Willie.  Belser also stated that when Willie confessed to the murder, he felt Willie was only joking.  Indeed, Willie himself admitted telling at least three different versions of his story at one time or another.

Id. at 234-35, 467 S.E.2d at 922.
Sanders was unavailable to testify due to the exercise of his Fifth Amendment rights.  Buff would testify that Sanders confessed to the murder, thereby exposing him to possible further criminal charges.  The only corroboration was from the eyewitness testimony of Brandon McCants, who testified that he saw Sanders shoot Lee, and Dushuns statement that he and Lucius withdrew.  However, McCants did not come forward with his information until two months after the incident, even though he was questioned by police much earlier; Dushun obviously had motive to lie; and, when arrested shortly after the shooting, Sanders tested negative for gunshot residue.  Lastly, but most importantly, Sims, Buffs boyfriend, was charged with the murder as well, and Buffs statement would exculpate him.  Therefore, she had motive to make up the story about Sanders confession.
Based on the totality of the circumstances, and because of the lack of corroboration and Buffs possible motivation to be untruthful, the trial court correctly excluded her testimony.  Lucius did not carry his burden of showing circumstances clearly corroborating the making of the statement.  See United States v. Salvador, 820 F.2d 558 (2d Cir. 1987) (stating inference of trustworthiness from proffered corroborating circumstances must be strong, not merely allowable, not an insignificant hurdle).  Moreover, the circumstances do not indicate that the statement was not fabricated.  See United States v. Bagley, 537 F.2d 162 (5th Cir. 1976) (excluding statement on basis of doubt as to whether it was made).  We affirm the trial courts reasoning that, because the State conceded neither Staten brother was the shooter, showing Sanders as opposed to Sims was the shooter did nothing to aid the jury in its decision.  The trial court did not abuse its discretion in refusing to admit the testimony.
III.  Jury Charge
Lucius contends the trial court erred in refusing to charge mere association and mere suspicion.  We disagree.
The law to be charged must be determined from the evidence presented at trial.  State v. Knoten, 347 S.C. 296, 555 S.E.2d 391 (2001); State v. Cole, 338 S.C. 97, 525 S.E.2d 511 (2000).  The judge is required to charge only the current and correct law of South Carolina.  State v. Hughey, 339 S.C. 439, 529 S.E.2d 721 (2000).  In reviewing jury charges for error, we must consider the courts jury charge as a whole in light of the evidence and issues presented at trial.  State v. Adkins, 353 S.C. 312, 577 S.E.2d 460 (Ct. App. 2003).  A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law.  Id. at 318, 577 S.E.2d at 464.  To warrant reversal, a trial judges refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant.  State v. Reese, 359 S.C. 260, 597 S.E.2d 169 (Ct. App. 2004).  Failure to give requested jury instructions is not prejudicial error where the instructions given afford the proper test for determining the issues.  State v. Burkhart, 350 S.C. 252, 263, 565 S.E.2d 298, 304 (2002).
Lucius requested a charge on mere suspicion before the charge was given, and then objected to the charge when he believed the trial court insufficiently presented the law on mere suspicion to the jury.  Though the trial court did not specifically address mere suspicion, its charge on the whole, combined with the law on reasonable doubt and mere presence and knowledge, conveyed to the jury the notion that mere suspicion is insufficient for finding a defendant guilty.  Therefore, the trial courts refusal to specifically charge mere suspicion was neither erroneous nor prejudicial to Lucius, as required by Burkhart.  See Burkhart, 350 S.C. at 263, 565 S.E.2d at 304.
Lucius never requested a charge on mere association before the trial court actually administered the charge.  Furthermore, he did not request such an instruction after the trial court had charged the jury with the law.  The trial court did not have an opportunity to rule upon the objection.  See State v. Ford, 334 S.C. 444, 513 S.E.2d 385 (Ct. App. 1999) (to preserve objection to jury charge, defendant must raise the issue at trial).  In addition, Rule 20(b) of the South Carolina Rules of Criminal Procedure provides:

Notwithstanding any request for legal instructions, the parties shall be given the opportunity to object to the giving or failure to give an instruction before the jury retires, but out of the hearing of the jury.  Any objection shall state distinctly the matter objected to and the grounds for objection.  Failure to object in accordance with this rule shall constitute a waiver of objection.

Therefore, the issue is not preserved for appeal.  Furthermore, although Dushun objected to the trial courts alleged failure to include a charge on mere association, an appellant may not preserve an issue for appeal by way of a co-defendants objection.  See State v. Carriker, 269 S.C. 553, 555, 238 S.E.2d 678, 678 (1977) (While appellants co-defendant did object, the appellant may not utilize the objection of another defendant to gain review.).
CONCLUSION
For the reasons stated herein, Luciuss conviction is
AFFIRMED.
 ANDERSON, BEATTY and SHORT, JJ., concur.

[1] The trial court declared a mistrial on Luciuss charge for murder.
[2] Britt stated he was present when Lee and the Statens had a confrontation on the Saturday before the shooting.
[3] 541 U.S. 36, 124 S.Ct. 1354 (2004).
[4] Lucius further claims the trial court erred in admitting the hearsay statements because they actually relate to a prior bad act, not an excited utterance involving the event.  However, this objection was not made at trial, and the trial court did not have an opportunity to rule upon the objection.  See State v. Simmons, 360 S.C. 33, 599 S.E.2d 448 (2004) (noting that, to be preserved for appellate review, issue must be raised and ruled upon in the trial court).  Therefore, the issue is not preserved for appeal.