

# IN THE
# TENTH COURT OF APPEALS

## No. 10-15-00181-CR

**DAVID JOHN SMITH,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

**From the 249th District Court
Johnson County, Texas
Trial Court No. F49384**

## MEMORANDUM  OPINION

In three issues, appellant, David John Smith, challenges his conviction for the felony offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (West Supp. 2015). Specifically, appellant contends that the trial court: (1) violated his right to confrontation when it admitted hearsay statements made by appellant's wife to police at the couple's house and in a 911 call; and (2) erred in admitting hearsay statements made by appellant's wife to police. Because we overrule all of appellant's issues on appeal, we affirm.

# I. APPELLANT'S RIGHT OF CONFRONTATION

In his first and second issues, appellant argues that the trial court violated his right to confrontation when it admitted statements made by appellant's wife to police during a 911 call and at the couple's house. We disagree.

## A. Applicable Law

With regard to statements made during a 911 call, this Court has stated that we review de novo the trial court's ruling that the admission of the 911 call did not violate appellant's rights under the Confrontation Clause. *Kearney v. State*, 181 S.W.3d 438, 441 (Tex. App.—Waco 2005, pet. ref'd) (citing *McClenton v. State*, 167 S.W.3d 86, 93 (Tex. App.—Waco 2005, no pet.)).

> The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause's central concern is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *Lilly v. Virginia*, 527 U.S. 116, 124-24, 119 S. Ct. 1887, 1894, 144 L. Ed. 2d 117 (1999). The United States Supreme Court recently held that "testimonial statements" of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only when the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1368-69, 158 L. Ed. 2d 177 (2004).

*Id.* at 441-42.

The threshold inquiry in a *Crawford* analysis is whether the statements were testimonial. *Spencer v. State*, 162 S.W.3d 877, 879 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). "Whether a statement is testimonial is a question of law." *Pollard v. State*, 392 S.W.3d 785, 792 (Tex. App.—Waco 2012, pet. ref'd) (citing *Langham v. State*, 305 S.W.3d

568, 576 (Tex. Crim. App. 2010); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)). The *Crawford* Court did not define "testimonial," but it did describe three categories of testimonial evidence: (1) "ex parte in-court testimony or its functional equivalent," such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements" of the same nature "contained in formalized testimonial materials," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364. The *Crawford* Court further explained that the term "testimonial" applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Id.* at 68, 124 S. Ct. at 1374.

In analyzing whether statements are testimonial in nature, this Court has followed the Fourteenth Court of Appeals's reasoning in *Ruth v. State*. 167 S.W.3d 560, 568-70 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). *See Kearney*, 181 S.W.3d at 442-43. In *Ruth*, the Court considered the following criteria to determine whether a statement is testimonial:

(1) Testimonial statements are official and formal in nature.

(2) Interaction with the police initiated by a witness or the victim is less likely to result in testimonial statement than if initiated by the police.

(3) Spontaneous statements to the police are not testimonial.

(4) Responses to preliminary questions by the police at the scene of a crime while police are assessing and securing the scene are not testimonial.

167 S.W.3d at 568-69. The *Ruth* Court concluded that statements to the police—whether spontaneous or in response to preliminary questions—when police are called to a crime scene shortly after a crime are not testimonial because the interaction was not initiated by police, nor was the interaction formal or structured. *Id.* at 569 (citing *Spencer*, 162 S.W.3d at 882-83). Later, the *Ruth* Court mentioned:

> [S]tatements made during 911 calls are similar in nature to the situation we addressed in *Spencer*. Such statements are not given in response to structured police questioning or with an eye to [] future legal proceedings but are initiated by a victim or witness to obtain police assistance. *See People v. Corella*, 122 Cal. App. 4th 461, 18 Cal. Rptr. 3d 770, 776 (Ct. App. 2004); *People v. Moscat*, 3 Misc. 3d 739, 777 N.Y.S.2d 875, 879-80 (Crim. Ct. 2004); *State v. Davis*, 154 Wn.2d 291, 111 P.3d 844, 849 (Wash. 2005). They usually do not bear any of the official, formal qualities of the police interactions the Confrontation Clause was intended to protect against. *See Corella*, 18 Cal. Rptr. 3d at 776; *Moscat*, 777 N.Y.S.2d at 879-80; *Davis*, 111 P.3d at 850-51. Some courts have held that statements made during 911 calls should be analyzed on a case-by-case basis because some statements could be testimonial under certain circumstances. *See People v. West*, 355 Ill. App. 3d 28, 823 N.E.2d 82, 91, 291 Ill. Dec. 72 (Ill. App. Ct. 2005) (holding that 911 calls should be analyzed on a case-by-case basis to determine whether the statements at issue were volunteered to obtain police action or the result of interrogation to gather evidence for use in criminal prosecution); *People v. Mackey*, 5 Misc. 3d 709, 785 N.Y.S.2d 870, 872 (Crim. Ct. 2004) (noting that "various courts have begun to adopt a fact-specific analysis of the particular call and the caller's motive for making the call" in conducting *Crawford* analyses); *Davis*, 111 P.3d at 850 ("In most cases, one who calls 911 for emergency help is not 'bearing witness,' whereas calls made to the police simply to report a crime may conceivably be considered testimonial. It is necessary to look at the circumstances of the 911 call in each case to determine whether the declarant knowingly provided the functional equivalent of testimony to a government agent."). *But see People v. Cortes*, 4 Misc. 575, 781 N.Y.S.2d 401, 415 (Sup. Ct. 2004) (categorically concluding that "calls to 911 to report a crime are testimonial under [*Crawford*]").

*Id.*

**B. Facts**

Wylene Landrum, a police communications officer for the City of Burleson, stated that she took a 911 call from appellant's wife, Amanda, on the day in question. Landrum described the call as follows:

> The original call—the call came in as the wife was upset because her husband—she, clearly, was very upset because she said that[s] he's got mental issues, she's tired, she needs sleep, her husband's intoxicated and he won't leave her alone.
>
> At that point, I could hear him a little bit. I couldn't hear him, but I could hear her saying, "Leave me alone, leave me alone."
>
> I went ahead and dispatched the officers out there fairly quickly for the officers to be on the way, and I stayed on the phone with her the whole time.
>
> I have asked her if he was still there. And at the time, he was still there. She believed he was still there the whole time. I asked her where he was at, and she said that he went out to the car. And when I asked her wherever the car was, she said it was in the garage. I did ask her also, you know, I believe, you know, did she think he would leave. And she didn't believe he would leave.

Thereafter, over appellant's objection, the trial court admitted the tape-recorded version of the 911 call.

Officer Tracy Fowler of the Burleson Police Department testified that she responded to a disturbance at appellant's house. Upon arriving, Officer Fowler spoke with Amanda. Officer Fowler described Amanda's demeanor as very upset and agitated. Officer Fowler soon discovered that appellant was not at the house and that his blue Nissan truck was not in the garage. Officer Fowler worried that appellant "wasn't on

scene and I had been advised he had been drinking and left in his vehicle," which constituted an ongoing public-safety issue. Over appellant's objection, Officer Fowler noted that Amanda stated that appellant "was extremely intoxicated" and that she could not believe he had left. At some point during the conversation, Amanda noticed a blue Nissan truck driving by, which she identified as appellant's. Officer Fowler observed the truck and ran to her patrol car so that she could follow the truck. Eventually, Officer Fowler initiated a traffic stop.

Upon stopping his truck, appellant opened the driver-side door, took the keys out of the ignition, and stepped out—actions Officer Fowler deemed to be odd, especially given that appellant had not been ordered to exit the vehicle. In any event, when appellant stepped out of the truck, Officer Fowler noticed that appellant "was very off balance"; that his eyes "were very blood shot"; and that he had a "very strong odor of alcohol." She also saw four unopened, cold, sixteen-ounce Keystone Light beer cans in the seat next to where appellant was sitting. When speaking with Officer Fowler, appellant's speech was "lethargic and slow rather than slurred." Appellant acknowledged that he left the house because Amanda had feared for her safety, and because he was afraid Amanda had called the police. Appellant later admitted to having consumed "less than six Keystone light" between noon and 3:00 p.m. on the day in question.[1] Appellant also agreed that "it was not a good idea to be driving because .08

---

[1] The record reflects that Officers Fowler and Brandon Lyman arrived at appellant's house at approximately 3:40 p.m. on September 23, 2014.

was a very small amount." Appellant refused to participate in field sobriety tests and was subsequently placed under arrest for suspicion of driving while intoxicated.

Later, after receiving DIC-24 warnings at the Burleson Police Department, appellant refused to provide either a breath or blood sample. In response, officers obtained a warrant for appellant's blood and transported him to Texas Health Resources in Burleson where two vials of blood were taken by a registered nurse. Subsequent testing revealed that appellant's average blood-alcohol level was 0.228.

## C. Discussion

Based on our review of the record, we cannot say that the statements made by Amanda in either instance were given in response to structured police questioning or with an eye to future legal proceedings. In fact, the statements made by Amanda during the 911 call were initiated by Amanda to obtain police assistance. Moreover, the questions asked by Landrum during the 911 call were designed to further evaluate the situation to determine if an emergency existed and whether Amanda was at risk of harm as a result of appellant's actions. This Court and many others have held that such statements are not testimonial and do not implicate a defendant's right of confrontation. *See Kearney*, 181 S.W.3d at 443; *see also Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364; *Ruth*, 167 S.W.3d at 568-70; *Spencer*, 162 S.W.3d at 879.

Additionally, we believe that the record demonstrates that Amanda's statements at the couple's house were made in response to preliminary questions by police at the scene of the crime while they were assessing and securing the scene. *See Kearney*, 181 S.W.3d at 442; *see also Ruth*, 167 S.W.3d 568-69. Indeed, when Amanda spoke with police

at the couple's house, appellant had fled and officers were attempting to discover his whereabouts to minimize the impact of his suspected drunk driving. *See Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) ("Statements are non[-]testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). We therefore conclude that the statements made by Amanda at the couple's house are also non-testimonial and do not implicate appellant's right of confrontation. *See Kearney*, 181 S.W.3d at 442; *see also Ruth*, 167 S.W.3d 568-69.

Accordingly, we cannot conclude that the trial court abused its discretion in admitting the complained-of evidence over appellant's objection under the Confrontation Clause of the United States Constitution. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ("In determining whether a trial court erred in admitting evidence, the standard of review is abuse of discretion. A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone which reasonable persons might disagree."). We overrule appellant's first and second issues.

## II.    AMANDA'S STATEMENT THAT APPELLANT WAS DRUNK

In his third issue, appellant asserts that the trial court erred in admitting statements made by Amanda to police while at the couple's house because the statements

contained inadmissible hearsay. Appellant specifically complains about Amanda's statement that he was drunk.

At trial, appellant objected to Amanda's statement that he was drunk, arguing that the statement is hearsay. The State responded with several hearsay exceptions, including the present-sense impression and excited-utterance exceptions. The trial court overruled appellant's objection and admitted Amanda's statement into evidence.

Assuming without deciding that the statement is hearsay, as the proponent of the evidence, the State had the burden to establish that a hearsay exception applied. *Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008). Under Texas Rule of Evidence 803(1), present-sense impressions are not excluded by the hearsay rule. *See* TEX. R. EVID. 803(1). The Rule defines a present-sense impression as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *Id.* A statement that meets this definition is admissible under the rationale that, because of the contemporaneous nature under which it is made, the statement is free from the defects of memory and is unclouded by the potential deception of a calculated misstatement. *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992); *Freeman v. State*, 230 S.W.3d 392, 401 (Tex. App.—Eastland 2007, pet. ref'd). "If the declarant has had time to reflect upon the event and the conditions he observed, this lack of contemporaneity diminishes the reliability of the statements and renders them inadmissible under the rule." *Fischer v. State*, 252 S.W.3d 375, 381 (Tex. Crim. App. 2008).

Landrum testified that Amanda stated during the 911 call that appellant was intoxicated. The record reflects that five minutes after making the 911 call Officer Fowler arrived at the scene. Amanda once again stated that she perceived appellant to be drunk. Given that only five minutes transpired between the 911 call and Officer Fowler arriving at the scene, we do not believe that the unreflective nature of a present-sense impression was destroyed. *See* TEX. R. EVID. 803(1); *see also Fischer*, 252 S.W.3d at 381; *Rabbani*, 847 S.W.2d at 560; *Freeman*, 230 S.W.3d at 401.

However, to the extent that it can be argued that the five-minute lapse in time does not satisfy the contemporaneity element, we also believe that the statement was admissible as an excited utterance. The excited utterance hearsay exception provides that the following statements are not excluded by the hearsay rule: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2). Similar to the exception for present-sense impressions, the rationale for the admissibility of an excited utterance is that the circumstances under which it is made "eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." *Idaho v. Wright*, 497 U.S. 802, 820, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). However, unlike the determination concerning an alleged present-sense impression, which focuses on the contemporaneity of the statement, the analysis of an alleged excited utterance is focused on the spontaneity of the statement. *McCarty v. State*, 257 S.W.3d 238, 239-40 (Tex. Crim. App. 2008). We must "determine

whether the statement was made 'under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.'" *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003) (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)).

Here, Landrum testified that Amanda was very upset and agitated at appellant's actions and behavior. Officer Fowler, who observed Amanda five minutes later, also described Amanda as very upset and agitated. Additionally, the record indicates that one of the reasons Amanda called 911 was to get appellant to leave her alone. Given that only five minutes elapsed between the 911 call and Officer Fowler arriving at the scene and that both Landrum and Officer Fowler described Amanda as very upset and agitated, we conclude that Amanda's statement that appellant was drunk could also fall within the excited-utterance exception to the hearsay rule. *See* TEX. R. EVID. 803(2); *see also Wright*, 497 U.S. at 820, 110 S. Ct. at 3139; *McCarty*, 257 S.W.3d at 239-40.

Based on the foregoing, we cannot say that the trial court abused its discretion by admitting the complained-of statement under either the present-sense-impression or excited-utterance exceptions to the hearsay rule. *See* TEX. R. EVID. 803(1); *McCarty*, 257 S.W.3d at 239-40; *Fischer*, 252 S.W.3d at 381; *Rabbani*, 847 S.W.2d at 560; *Freeman*, 230 S.W.3d at 401; *see also McDonald*, 179 S.W.3d at 576. We overrule appellant's third issue.

## III.   CONCLUSION

We affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed December 17, 2015
Do not publish
[CR25]

